PENZATO, J.
*847 Appellant, Bridget Jackson, appeals the trial court's judgment granting summary judgment in favor of ACME Truck Line, Inc., (ACME) and dismissing her claims and the trial court's judgment denying her motion for new trial. For the reasons that follow, we affirm the trial court.
FACTS AND PROCEDURAL HISTORY
This matter arises out of an accident on February 17, 2015, wherein Troylond Wise was driving a 1999 Peterbilt 18-wheeler that he owned. Before the accident Takisha Welch had asked Mr. Wise to pull a trailer for use by Alpha of Charisma Carnival Club (Alpha) as a float in a 2015 Mardi Gras parade that took place in Franklin, Louisiana. Ms. Welch, on behalf of Alpha, paid Mr. Wise $100.00 for the use of his tractor-trailer. On the date of the parade, Ms. Jackson was a passenger in the float being pulled by Mr. Wise. While the tractor-trailer attempted to make a right turn, Ms. Jackson was thrown from the float, and Mr. Wise ran over her twice, resulting in severe injuries. As a result of the accident, Ms. Jackson filed suit against Mr. Wise, ACME, and First Guard Insurance Company (First Guard), the non-trucking liability insurer for the tractor-trailer.[1] First Guard and Ms. Jackson have entered into a settlement agreement, and First Guard has been dismissed from this action.[2]
Prior to the 2015 accident, on September 1, 2011, Mr. Wise and ACME entered into a five-year lease agreement, wherein Mr. Wise leased his tractor-trailer to ACME in order to transport cargo for ACME. Section 5 of the lease agreement provided as follows:
EXCLUSIVE USE: It is understood and agreed that [ACME] shall have exclusive possession, control and use of the Leased Equipment for the duration of the Lease Agreement. [ACME] assumes complete responsibility for the operation of the Leased Equipment for the duration of the Lease Agreement. The Leased Equipment shall not be operated for any other purpose other than the transportation of [ACME] authorized shipments. Further, Owner is specifically prohibited from entering into any trip-lease, or other agreement or contract involving the Leased Equipment during the lease term, nor shall Owner permit the unauthorized use of the Leased Equipment at any time whatsoever. The Owner agrees that the Leased Equipment shall not be used for any parades, social events, or any private use whatsoever .... (emphasis added).
Based on the lease agreement, ACME filed a motion for summary judgment, claiming that the only allegation made against it was that the tractor-trailer was owned and/or being driven by ACME. ACME asserted that it was undisputed that it was not the owner of the tractor-trailer, but even if it was, it could not be liable based on ownership. Furthermore, ACME, citing Jones v. Western Preferred Casualty Company, et al., 633 So.2d 667, 669 (La. App. 1 Cir. 1993), writ denied, 94-0273 (La. 4/4/94), 635 So.2d 1123, asserted that it had no liability as a lender of the *848 tractor-trailer because under Louisiana law one who lends his vehicle to another is not responsible for the negligence of that person "unless he had or should have had knowledge that the borrower was physically or mentally incompetent to drive." ACME further asserted that no employee/employer relationship was alleged between Mr. Wise and ACME, and even if there was, it could not be liable on this basis. ACME also claimed that Mr. Wise was in clear violation of his lease at the time of the accident and was not carrying cargo for ACME. Anticipating the response of Ms. Jackson, ACME pointed out that 49 C.F.R. § 376.12, which provides that the owner-lessor is deemed to be acting in the business of the carrier-lessee, is a rebuttable presumption. ACME attached to its motion for summary judgment relevant portions of deposition testimony of Mr. Wise, relevant portions of deposition testimony of Ms. Welch, photographs of the accident scene, and relevant portions of the lease agreement.
Ms. Jackson filed an opposition to ACME's motion for summary judgment, claiming that pursuant to 49 C.F.R. § 376.12(c), ACME was required to "assume complete responsibility for the operation of the equipment for the duration of the lease." Ms. Jackson asserted that whether the tractor-trailer was operating in the business of ACME was irrelevant and there were genuine issues of material fact which precluded summary judgment.
ACME filed a reply to Ms. Jackson's opposition claiming that Ms. Jackson's argument was that she need only show the existence of a lease between the owner-lessor (Mr. Wise) and the carrier-lessee (ACME) to hold ACME liable for the actions of Mr. Wise. Relying on Bays v. Summitt Trucking, LLC, 691 F.Supp.2d 725, 730 (W.D. Ky. 2010), citing Penn v. Virginia International Terminals, Inc., 819 F.Supp. 514, 523 (E.D. Va. 1993), ACME also pointed out that the majority of the cases cited by Ms. Jackson were before the 1992 amendments to the Interstate Commerce Commission (ICC) regulations[3] and were "based upon an interpretation of the ICC regulations that were unintended by the ICC." ACME asserted that after 1992, the cases agreed that 49 C.F.R. § 376.12(c) only created a rebuttable presumption of statutory employment. See Bays, 691 F.Supp.2d at 730-32. ACME also claimed that the issue of the MCS-90 endorsement[4] applied to insurance carriers, not ACME, a motor carrier.
At the hearing on the motion for summary judgment, ACME argued that Mr. Wise was not in the course and scope of his employment. Ms. Jackson argued that FMCSA regulations, 49 C.F.R. § 350-399, *849 specifically 49 C.F.R. § 376.12(c)(1), created strict liability on the part of ACME for the actions of Mr. Wise. After hearing the arguments, the trial court gave oral reasons for judgment pointing out that the FMCSA only applied to interstate, not intrastate trips, as was the trip at issue in this matter. Furthermore, the trial court found that because Mr. Wise was not in the course and scope of his employment at the time of the accident, ACME was entitled to summary judgment. The trial court signed a judgment in accordance with its oral reasons on August 2, 2016, granting ACME's motion and dismissing all claims of Ms. Jackson against ACME. Ms. Jackson filed a motion for new trial arguing that ACME's written motion for summary judgment and memorandum in support requested relief based on vicarious liability, course and scope of employment issues, and the viability of the parade exclusion in the lease agreement with Mr. Wise, but that at the hearing ACME argued about the inapplicability of 49 C.F.R. § 376.12 based on Jurey v. Kemp , 2011-0142 (La. App. 1 Cir. 9/20/11), 77 So.3d 83, which Ms. Jackson claims does not apply to the facts of this case. The motion for new trial was also based on Ms. Jackson's claim that ACME filed a reply brief to her opposition to ACME's motion for summary judgment setting forth new grounds for relief, expanding the scope of its motion for summary judgment. Ms. Jackson asserted that at the hearing on the motion for summary judgment, ACME presented for the first time that 49 C.F.R. § 376.12 did not apply to the lease between ACME and Mr. Wise because the tractor-trailer was operating within the state of Louisiana and not in interstate commerce.
After a hearing, the trial court denied the motion for new trial, and on February 21, 2017, signed a judgment in accordance therewith. It is from this judgment that Ms. Jackson appeals. Ms. Jackson assigns as error whether 49 C.F.R. § 376.12 imposes liability; whether La. C.C.P. art. 966(F) allows a defendant to advance arguments not in its brief; and whether a new trial should have been granted.
JURISDICTION
Appellate courts have a duty to examine subject matter jurisdiction sua sponte, even when the parties do not raise the issue. Texas Gas Exploration Corp. v. Lafourche Realty Co., Inc., 2011-0520 (La. App. 1 Cir. 11/9/11), 79 So.3d 1054, 1059, writ denied, 2012-0360 (La. 4/9/12), 85 So.3d 698. Our appellate jurisdiction extends to "final judgments," which are those that determine the merits in whole or in part. La. C.C.P. arts. 1841 and 2083 ; see Van ex rel. White v. Davis, 2000-0206 (La. App. 1 Cir. 2/16/01), 808 So.2d 478, 483.
Ms. Jackson appealed only the judgment rendered on February 21, 2017, which was the judgment denying her motion for a new trial. The established rule in this circuit is that the denial of a motion for new trial is an interlocutory and non-appealable judgment.[5] McKee v. Wal-Mart Stores, Inc., 2006-1672 (La. App. 1 Cir. 6/8/07), 964 So.2d 1008, 1013, writ denied, 2007-1655 (La. 10/26/07), 966 So.2d 583. However, the Louisiana Supreme Court has directed us to consider an appeal of the denial of a motion for new trial as an appeal of the judgment on the merits as well, when it is clear from the appellant's brief that he intended to appeal the merits of the case.
*850 Carpenter v. Hannan, 2001-0467 (La. App. 1 Cir. 3/28/02), 818 So.2d 226, 228-29, writ denied, 2002-1707 (La. 10/25/02), 827 So.2d 1153. Furthermore, when an unrestricted appeal is taken from a final judgment, the appellant is entitled to seek review of all adverse interlocutory rulings prejudicial to him, in addition to the review of the final judgment. Landry v. Leonard J. Chabert Medical Center, 2002-1559 (La. App. 1 Cir. 5/14/03), 858 So.2d 454, 461 n.4, writs denied, 2003-1748, 2003-1752 (La. 10/17/03), 855 So.2d 761. Thus, the interlocutory denial of a motion for new trial is subject to review on appeal in connection with the review of an appealable judgment in the same case. Moran v. G & G Const., 2003-2447 (La. App. 1 Cir. 10/29/04), 897 So.2d 75, 83 n.4, writ denied, 2004-2901 (La. 2/25/05), 894 So.2d 1148. The standard of review of a denial of a motion for new trial, whether on peremptory or discretionary grounds, is that of abuse of discretion. Rao v. Rao, 2005-0059 (La. App. 1 Cir. 11/4/05), 927 So.2d 356, 361, writ denied, 2005-2453 (La. 3/24/06), 925 So.2d 1232.
It is obvious from Ms. Jackson's brief that she intended to appeal the judgment on the merits-the August 2, 2016 judgment that granted ACME's motion for summary judgment. The granting of a motion for summary judgment and dismissing a defendant with prejudice is a final, appealable judgment. See La. C.C.P. art. 1915(A)(1) and (3) ; Vicknair v. Our Lady of the Lake Hosp., Inc., 2017-0273 (La. App. 1 Cir. 4/18/17), 2017 WL 1386420 (unpublished). Thus we will treat the appeal accordingly.
DISCUSSION
Summary Judgment
Summary judgment procedure is favored and "is designed to secure the just, speedy, and inexpensive determination of every action .... and shall be construed to accomplish these ends." La. C.C.P. art. 966(A)(2).[6] In reviewing the trial court's decision on a motion for summary judgment, this court applies a de novo standard of review using the same criteria applied by the trial courts to determine whether summary judgment is appropriate. Smith v. Our Lady of the Lake Hosp., Inc., 93-2512 (La. 7/5/94), 639 So.2d 730, 750-51.
"After an opportunity for adequate discovery, a motion for summary judgment shall be granted if the motion, memorandum, and supporting documents show that there is no genuine issue as to material fact and that the mover is entitled to judgment as a matter of law." La. C.C.P. art. 966(A)(3).
A fact is material if it potentially ensures or precludes recovery, affects a litigant's ultimate success, or determines the outcome of the legal dispute. A genuine issue of material fact is one as to which reasonable persons could disagree; if reasonable persons could reach only one conclusion, there is no need for trial on that issue and summary judgment is appropriate.
Jackson v. City of New Orleans , 2012-2742 (La. 1/28/14), 144 So.3d 876, 882, cert. denied , --- U.S. ----, 135 S.Ct. 197, 190 L.Ed.2d 130 (2014).
Applicability of Interstate Commerce Commission Regulations
Ms. Jackson assigns as error that the trial court failed to apply the "complete responsibility" provisions of the FMCSA, *851 specifically 49 C.F.R. § 376.12(c)(1), and thereby failed to find ACME liable for the actions of Mr. Wise. ACME counters that the aforementioned federal regulation is not applicable because the FMCSA's general jurisdiction over motor carriers is limited to interstate travel, and the present situation involves intrastate travel. The trial court determined that because Mr. Wise was not on an interstate trip at the time of the accident, the federal regulations did not apply.
The Department of Transportation regulates leases of equipment used in interstate commerce under the authority of 49 U.S.C. § 13501, which states, in relevant part:
The Secretary and the Board have jurisdiction, as specified in this part, over transportation by motor carrier and the procurement of that transportation, to the extent that passengers, property or both are transported by the motor carrier-
(1) between a place in-
(A) a State and a place in another State;
(B) a State and another place in the same State through another State ...
An "authorized carrier may perform authorized transportation in equipment it does not own" only if there is a written lease granting the use of the equipment and meeting the requirements contained in 49 C.F.R. § 376.12. 49 C.F.R. § 376.11.
Relying on 49 C.F.R. § 376.12(c)(1) and federal jurisprudence, Ms. Jackson maintains that to ensure that the motor carrier cannot insulate itself from liability to injured persons, federal regulations require a motor carrier to assume "exclusive control" and "complete responsibility" for its leased vehicles during the duration of the lease, and there are no exceptions to this rule. Ms. Jackson also asserts that because ACME entered into a lease with Mr. Wise, it is "undisputed that federal regulations of the FMCSA apply to that lease." We disagree that it is undisputed that the federal regulations apply to the present case.
The purpose of the regulations is "to protect members of the public from motor carriers' attempts to escape liability for the negligence of drivers by claiming their drivers were independent contractors." Mendoza v. Hicks, 2016 WL 915297 at * 2 (E.D. La. 2016), citing Perry v. Harco Nat. Ins. Co., 129 F.3d 1072, 1074 (9th Cir. 1997). The regulations mandate that under a regulated lease, the carrier-lessee assume "exclusive possession, control, and use of the equipment for the duration of the lease[,]" and "assume[s] complete responsibility for the operation of the equipment or duration of the lease." 49 C.F.R. § 3 76.12(c).
Ms. Jackson claims that 49 C.F.R. § 376.12(c)(1) creates strict liability on behalf of ACME for the actions of Mr. Wise, and relies on Reliance National Insurance Company v. Royal Indemnity Co., 2001 WL 984737 (S.D.N.Y. Aug 24 2001). Reliance is factually similar to the present case in that a member of the public was injured by a tractor-trailer during a parade. Reliance, the trucking insurer for the motor carrier, sought a declaratory judgment action seeking to establish that it owed no coverage for a wrongful death arising out of an accident during a parade. Reliance argued that the regulations did not apply to hold the motor carrier liable for the accident because the parade trip was a wholly intrastate trip over which the ICC had no jurisdiction. Id. at *4. Reliance asserted that Congress delineated the ICC's authority in 49 U.S.C. § 13501 to only interstate trips.
The court rejected Reliance's argument finding that the intrastate nature of the particular trip at issue was not determinative but that because the lease between the *852 owner-lessor and the carrier-lessee was for interstate transport, the regulations applied, and Reliance was liable for the insurance coverage provided in its policy to the carrier-lessee.
A federal court in Louisiana also relied upon the reasoning in Reliance to hold that the truck's procurement or lease agreement, rather than the circumstances of the particular loss, determine the application of the mandatory insurance required of the motor carrier. Travelers Indent. Co. of IL v. W. Am. Specialized Transp. Servs. Inc., 235 F.Supp.2d 522, 529-30 (W.D. La. 2002).
The United States Fifth Circuit Court of Appeals disagreed with the reasoning of both Reliance and Travelers in Canal Ins. Co. v. Coleman , 625 F.3d 244, 250-51 (5th Cir. 2010), in determining the applicability of insurance coverage pursuant to the MCS-90 endorsement, which it held was dependent upon the trip taken at the time of the loss. The Fifth Circuit analyzed many different cases, including Reliance and Travelers , and concluded that "the weight of authority from this Circuit and beyond supports [its] conclusion that the MCS-90 [endorsement] does not cover vehicles when they are not presently transporting property in interstate commerce." Coleman, 625 F.3d at 251.
ACME relies on Jurey to oppose Ms. Jackson's argument. In Jurey, when the accident occurred, Mr. Kemp, the driver of a tractor, had just picked up the trailer after maintenance was performed and was driving home. Jurey, 77 So.3d at 84 & 88 n.9. With respect to the MCS-90 endorsement, we stated that the endorsement only applies to interstate travel and not an intrastate trip. Jurey, 77 So.3d at 88-89. However, the summary judgment granted to the carrier-lessee was not before this court and we found it unnecessary to address whether Mr. Kemp was performing services for the carrier-lessee at the time of the accident. Jurey, 77 So.3d at 85 n.2.
We find that Ms. Jackson's reliance on Reliance to be misplaced as the present case does not involve the interpretation of the MCS-90 endorsement, and even if it did, the Fifth Circuit in Coleman has rejected the reasoning of Reliance. We also do not find Jurey to be determinative of the issues before us. In Jurey we were deciding whether there was insurance coverage, not whether the carrier-lessee was liable for the actions of the owner-lessor. Therefore, despite the arguments of the parties and the oral reasons of the trial court, none of the above cases are determinative of the facts of this case. ACME's trucking liability insurer has not been sued in this matter and whether the federally mandated insurance is applicable is not the issue before us.
Vicarious Liability of ACME
Ms. Jackson is attempting to hold ACME statutorily liable for the actions of Mr. Wise. Ms. Jackson claims that by virtue of the FMCSA regulations, ACME is vicariously liable for the negligent operation of a leased vehicle as long as a valid lease was in effect and the placard displaying the lessee's USDOT identification number was on the tractor (known as "logo liability). See Reliance, 2001 WL 984737 at *7-8.
In Simmons v. King, 478 F.2d 857, 860, 866 (5th Cir. 1973), the court held that the motor carrier regulations preempt state law in tort actions in which a member of the public is injured by the negligence of a motor carrier's employee while operating an interstate carrier vehicle. In Price v. Westmoreland, 727 F.2d 494, 495 (5th Cir. 1984), the court held that a carrier-lessee was vicariously liable for injuries to a passenger in a leased truck even though the driver of a truck leased by the carrier did not have permission to carry passengers *853 and the carrier had no knowledge of the passenger's presence. In both Simmons and Price, the tractor-trailer was hauling property in interstate commerce for the carrier-lessee at the time of the accident. Therefore, neither case discussed the scope of employment issue.
In 1956 Congress amended the Interstate Common Carrier Act "in order to protect the public from the tortious conduct of the often judgment-proof truck lessor operators by requiring interstate motor carriers to assume full direction and control of the vehicles 'as if they were the owners of such vehicles:' " Bays, 691 F.Supp.2d at 731, quoting Price, 727 F.2d at 495-96 (internal ellipses and brackets omitted). Congress' purpose is codified in the language of 49 U.S.C. § 14102(a)(4) which states:
(a) General authority of Secretary.-The Secretary may require a motor carrier providing transportation subject to jurisdiction under subchapter I of chapter 135 that uses motor vehicles not owned by it to transport property under an arrangement with another party to-
...
(4) have control of and be responsible for operating those motor vehicles in compliance with requirements prescribed by the Secretary on safety of operations and equipment, and with other applicable law as if the motor vehicles were owned by the motor carrier.
As a result of Section 14102, the ICC promulgated 49 C.F.R. § 376.12(c)(1) which states:
(c) Exclusive possession and responsibilities.
(1) The lease shall provide that the authorized carrier lessee shall have exclusive possession, control, and use of the equipment Tor the duration of the lease. The lease shall further provide that the authorized carrier lessee shall assume complete responsibility for the operation of the equipment for the duration of the lease.
Prior to 1992 many courts interpreted 49 C.F.R. § 376.12(c)(1) to create an irrebuttable "statutory employment" between carriers-lessees and owner-lessors that was independent from any state law definition. See Price, 727 F.2d at 495 ; Rodriguez v. Ager, 705 F.2d 1229, 1237 (10th Cir. 1983). Some courts even imposed strict vicarious liability on carriers for any damage caused by an owner-lessor while operating the leased vehicle. Rodriguez, 705 F.2d at 1237 ; Wellman v. Liberty Mut. Ins. Co., 496 F.2d 131, 136 (8th Cir. 1974). Ms. Jackson relies on both Rodriguez and Wellman in arguing that ACME is strictly liable for the actions of Mr. Wise.
However, in response to these cases, industry trade groups began petitioning the ICC which then issued guidance documents that questioned the judicial interpretation of its regulations. See Lease & Interchange of Vehicles (Identification Devices), 3 I.C.C.2d 92, 93 (1986). The ICC "revised the lease regulations [in 1986] to remove certain obligations that the earlier regulations had placed on motor carriers." Lohr v. Zehner, 2014 WL 2504574, at *3 (M.D. Ala. June 3, 2014). In the course of promulgating that regulation, the ICC emphasized that the nature of vicarious liability under a regulated lease is a matter of state, not federal, law:
We prefer that courts decide suits of this nature by applying the ordinary principles of State tort, contract, and agency law. The Commission did not intend that its leasing regulations would supersede otherwise applicable principles of State tort, contract, and agency law and create carrier liability where none would otherwise exist. Our regulations should have no bearing on this *854 subject. Application of State law will produce appropriate results.
Id., citing, Lease & Interchange of Vehicles, 3 I.C.C.2d 92, 93. The same issues present in the current matter were succinctly described in Lohr.
This exclusive-control regulation, along with corresponding language in lease agreements, has led to significant litigation across federal and state courts concerning the extent of motor carriers' vicarious liability to the public for negligent and wanton acts by the drivers of their leased vehicles. Courts have interpreted the regulations to impose various forms of vicarious liability on motor carriers. At first, some courts imposed so-called Togo liability' for all negligence involving a vehicle that displayed a carrier's identifying placards and motor-carrier number, regardless of the existence of a lease. See Mellon National Bank & Trust Co. v. Sophie Lines, Inc., 289 F.2d 473 (3d Cir. 1961) (imposing strict liability after a lease had been terminated because the motor carrier had not yet collected its placards from the driver/lessor) superseded by regulation, Lease & Interchange of Vehicles (Identification Devices) (49 C.F.R. Part 1057), 3 I.C.C.2d 92, 95-97 (1986)as recognized in Jackson v. O'Shields, 101 F.3d 1083, 1086-87 (5th Cir. 1996). Other courts imposed vicarious liability that mirrored traditional respondeat-superior principles, covering only those actions that were reasonably within the scope of employment for the motor carrier. See Wilcox v. Transam. Freight Lines, Inc., 371 F.2d 403, 404 (6th Cir. 1967) ("In our opinion, the I.C.C. regulations do not impose a liability on a carrier using leased equipment greater than that when operating its own equipment."). Finally, many courts imposed strict-lease liability: so long as there was a lease in effect, "exclusive control" and "complete responsibility" meant that the motor carrier was liable for any negligence involving the vehicle under lease. See Morris v. JTM Materials, Inc., 78 S.W.3d 28, 38-43 (Tex. Ct. App. 2002).
Lohr, 2014 WL 2504574, at *2. Ms. Jackson urges this court to apply a strict-lease liability and/or the "logo liability."
We agree with Lohr that the ICC attempted to alter the judicial interpretation of strict-lease liability or "logo liability." Relying on the ICC's own interpretation, Lohr stated, "[t]his court cannot find that the commission's interpretation was erroneous or inconsistent. The text of the regulation requires certain language within lease agreements, but it does not impose any liability scheme directly. It is reasonable to interpret the regulation as leaving that question to various States' common-law courts." Lohr, 2014 WL 2504574, at *3 (emphasis added).
Therefore, Lohr looked to Alabama state law to determine the scope of vicarious liability of a lessee under a federally regulated carrier lease. Additionally, Lohr explained that even if the federal law were to control, the carrier-lessee would only be held liable for the actions of the driver if he was within the scope of his employment by the carrier-lessee. Lohr, 2014 WL 2504574, at *4. Lohr noted that the authorizing statute makes clear that motor carriers should be liable for the operation of leased vehicles "as if the motor vehicles were owned by the motor carrier." 49 U.S.C. § 14102(a)(4). Lohr pointed out that the meaning of this provision was discussed in White v. Excalibur Ins. Co., 599 F.2d 50, 53 (5th Cir. 1979) which stated as follows:
To make them assume the burden of liability for the harm caused by their leased vehicles without according them the protection given employers under *855 state substantive law would broaden their exposure to suit beyond that to which employers in fact are subject. We find no warrant for such strict liability in the federal law.
Therefore, Lohr concluded that even applying federal law, the carrier-lessee would have the same protection against liability as an employer would receive; it would not be liable for actions by the owner-lessor/driver outside the scope of his employment. Lohr, 2014 WL 2504574, at *4.
In 1992, the ICC amended 49 C.F.R. § 376.12(c) by adding Subsection (4) which states:
Nothing in the provisions required by paragraph (c)(1) of this section is intended to affect whether the lessor or driver provided by the lessor is an independent contractor or an employee of the authorized carrier lessee. An independent contractor relationship may exist when a carrier lessee complies with 49 U.S.C. § 14102 and attendant administrative requirements.
As recognized by Edwards v. McElliotts Trucking, LLC, 268 F.Supp.3d 867, 878 (S.D.W. Va. 2017), even after the 1992 amendment adding Subsection (4), there is no consensus in the courts as to the relationship between carriers-lessees and owners-lessors. Edwards specifically set forth:
Three approaches have surfaced in the intervening years. A small number of courts to have come in contact with these regulations cling to the pre-1992 interpretation of the control regulation. A second group has emerged that holds that Subsection (c)(4) requires that courts interpret the control regulation to have no bearing on the classification of the relationship between carriers and owner-operators. Finally, a third group of courts believe the control regulation and Subsection (c)(4) create a rebuttable presumption of employment that can be rebutted by resort to state common law principles.
Edwards, 268 F.Supp.3d at 878 (internal citations omitted). Edwards determined that the rebuttable presumption determination was the most reasonable. Edwards, 268 F.Supp.3d at 878.
The addition of Subsection (c)(4) was also analyzed by Simpson v. Empire Truck Lines, Inc., 571 F.3d 475, 477 (5th Cir. 2009), in light of 49 U.S.C. § 14102(a)(4) and determined with regard to Texas workers' compensation law that the FMCSA regulations did not affect the terms "employer" and "employee" under state law. Interpreting Simpson, Barnett v. Bullock, 2015 WL 58869, at *5 (M.D. La. 2015), recognized that the definitions of the FMCSA regulations did not control either tort or worker's compensation liability, even if the definitions controlled with regard to insurance coverage.[7]
As both Lohr and Edwards determined, this court must look to state law to determine whether Mr. Wise was acting within the course and scope of his employment at the time of the accident to determine if ACME is liable to Ms. Jackson. We find it unnecessary to determine which line of cases to follow regarding whether Subsection (c)(4) has no bearing on the relationship *856 of the carrier and owner-lessor or creates a rebuttable presumption of employment because, under either scenario, we find the record supports that Mr. Wise was not acting in the furtherance of the business of ACME and was actually acting in direct contravention of the lease. 49 C.F.R. § 376.12(c) does not create vicarious liability on the part of ACME for the actions of Mr. Wise.
Based on the above statutes, regulations, and jurisprudence, we agree with the trial court that because Mr. Wise was acting outside the scope of his employment, the mandatory provisions of 49 C.F.R. § 376.12(c) do not apply to ACME in this situation to hold it vicariously liable for the actions of Mr. Wise.
New Arguments at Motion for Summary Judgment Hearing
Ms. Jackson asserts that the trial court violated La. C.C.P. art. 966(F) by permitting ACME to raise new arguments at the hearing that were not briefed. Louisiana Code of Civil Procedure article 966(F) states, "A summary judgment may be rendered or affirmed only as to those issues set forth in the motion under consideration by the court at that time."
Ms. Jackson argues that because the inter/intra-state argument was not set forth in ACME's motion for summary judgment, the trial court erred in granting the motion. ACME filed a motion for summary judgment arguing that it had no vicarious liability for the actions of Mr. Wise who was not in the course and scope of his employment at the time of the accident. Ms. Jackson then opposed the motion for summary judgment claiming that 49 C.F.R. § 376.12(c) created statutory liability on behalf of ACME for the actions of Mr. Wise. ACME responded at the hearing that 49 C.F.R. § 376.12(c) did not hold a carrier strictly liable for all the acts of a driver once a lease was signed. ACME explained the reason the federal regulations did not apply in this matter was because the trip Mr. Wise was on at the time was an intrastate trip not covered by the federal regulations and relied on the case of Jurey.
Although Ms. Jackson claims she had no notice of the argument made by ACME with regard to intrastrate trips, this court notes that ACME relied upon this case in its original motion for summary judgment. ACME did not request summary judgment based on 49 C.F.R. § 376.12(c), and the trial court did not render the summary judgment on that basis. Instead, the trial court determined that the federal regulations did not apply. Ms. Jackson opposed ACME's motion for summary judgment by relying on 49 C.F.R. § 376.12(c) and now complains that ACME pointed out that the regulation does not apply to the facts of this case. Ms. Jackson is therefore asking this court to fashion a rule that a party cannot point out to the court that another party's argument is inapplicable to the facts of the case. We decline to interpret La. C.C.P. art. 966(F) in such a manner.
Motion for New Trial
The standard of review of a denial of a motion for new trial, whether on peremptory or discretionary grounds, is that of abuse of discretion. City of Baton Rouge v. Douglas, 2016-0655 (La. App. 1 Cir. 4/12/17), 218 So.3d 158, 163 n.5. A new trial shall be granted when the judgment appears clearly contrary to the law and the evidence. La. C.C.P. art. 1972 ; Porche v. Winn-Dixie Louisiana, Inc., 1993-2075 (La. App. 1 Cir. 10/7/94), 644 So.2d 699, 702, writ denied, 1994-2643 (La. 12/16/94), 648 So.2d 394. When a motion for new trial is filed, it is the mover's burden to prove to the trial court that he is entitled to a new trial for one of the grounds listed in the Code of Civil Procedure. Id.
*857 Given our above opinion that the trial court correctly granted summary judgment in this matter, Ms. Jackson did not carry her burden that she was entitled to a new trial.
CONCLUSION
For the above and foregoing reasons, the August 2, 2016 judgment on the motion for summary judgment and the February 21, 2017 judgment on the motion for new trial are affirmed. All costs of this appeal are assessed against Bridget Jackson.
AFFIRMED.
Higginbotham, J. concurs. TMH
Holdrige J. concurs with reasons
HOLDRIDGE, J., concurs.
I concur in the result. I do think that the mover, ACME, raised a new legal theory in its reply memorandum, which the plaintiff was not given an opportunity to respond. It would have been the better practice in such a situation for the trial court to continue the hearing on the motion for summary judgment and allow Ms. Jackson an opportunity to rebut the new legal argument raised in ACME'S reply memorandum. However, since this court reviews a motion for summary judgment de novo, Ms. Jackson was given a full opportunity to brief the new legal argument raised in the mover's reply memorandum and this court was able to give a full review of the issue on appeal.

First Guard issued a non-trucking liability policy to cover when a truck was driving bobtail (without a trailer attached) or was operating solely for personal use.

Ms. Jackson has filed a supplemental and amending petition adding two other defendants, who are not the subject of this appeal.

Congress dissolved the ICC when it passed the Interstate Commerce Commission Termination Act of 1995 and replaced it with, among other agencies, the Federal Motor Carrier Safety Administration ("FMCSA"). See Pub. L. No. 104-88, 109 Sta. 803 (codified at 49 U.S.C. §§ 13101 -14901 ). When the ICC was abolished in 1995, its authority to regulate motor carriers was transferred to the Department of Transportation. John Deere Ins. Co. v. Nueva, 229 F.3d 853, 860 (9th Cir. 2000), cert. denied, 534 U.S. 1127, 122 S.Ct. 1063, 151 L.Ed.2d 967 (2002). Some of the cases relied on by the parties refer to the ICC. As such, this court will refer to either the ICC or FMCSA in its discussion even though the FMCSA currently administers the regulations at issue here.

The Motor Carriers Act requires that a policy include a MCS-90 endorsement that covers a judgment against a carrier for the negligence of a motor vehicle. 49 U.S.C. § 13906(a)(1) & (f). Pursuant to this authority, the FMCSA promulgated the MCS-90 endorsement, which states that the insurer must pay within certain limits of liability any final judgment against the insured for liability resulting from the negligent operation of motor vehicles. 49 C.F.R. § 387.15.

By 2005 La. Acts No. 205, effective January 1, 2006, La. C.C.P. art. 2083 was amended to remove the longstanding provision that interlocutory judgments that "may cause irreparable harm" are appealable. An interlocutory judgment is now appealable only when expressly provided by law. La. C.C.P. art. 2083(C). Accordingly, the denial of a new trial is not generally appealable. McKee, 964 So.2d at 1013 n.8.

Louisiana Code of Civil Procedure Article 966 was amended by La. Acts 2015, No. 422, and was effective January 1, 2016, so the amendment applies in this case since the motion for summary judgment was filed on May 19, 2016.

Ms. Jackson relies upon language in Mendoza to claim that ACME is vicariously liable for the actions of Mr. Wise. However, we find Mendoza distinguishable from the facts of this case. In Mendoza, the driver was transporting goods pursuant to a lease arrangement between a carrier-lessee and an owner-lessor. (Although there was an issue as to the lease since the owner-lessee had to borrow another truck for the actual trip, the driver was in the act of transporting goods for the carrier-lessee at the time of the accident). Mendoza, 2016 WL 915297 at *1. In the present case, it is undisputed that Mr. Wise was not transporting goods on behalf of ACME at the time of this accident.