# STATE OF LOUISIANA

# COURT OF APPEAL

# FIRST CIRCUIT

# 2020 CA 0197

# JANICE MARKS

# VERSUS

# WILLIAM SCHULTZ AND LISA SCHULTZ INDIVIDUALLY AND WILLIAM SCHULTZ AND LISA SCHULTZ D/B/A PO FOLKS FRUITS AND VEGETABLES, AND OHIO SECURITY INSURANCE COMPANY

**Judgment Rendered:** DEC 1 0 2020

On Appeal from the Eighteenth Judicial District Court
In and for the Parish of West Baton Rouge
State of Louisiana
Docket No. 43,874

Honorable J. Kevin Kimball, Judge Presiding

\*\*\*\*\*\*

| | |
|---|---|
| Richard G. Whitworth<br>Lohr E. Miller<br>Baton Rouge, Louisiana | Counsel for Plaintiff/Appellant,<br>Janice Marks |
| Matthew J. Davis<br>Jonathan D. Mayeux<br>Baton Rouge, Louisiana | Counsel for Defendants/Appellees,<br>William Schultz and Lisa Schultz<br>Individually and William Schultz and<br>Lisa Schultz d/b/a Po Folks Fruits and<br>Vegetables and Ohio Security<br>Insurance Company |

\*\*\*\*\*\*

BEFORE: HIGGINBOTHAM, THERIOT AND WOLFE, JJ.

**WOLFE, J.**

Plaintiff-appellant, Janice Marks, appeals the October 10, 2019 judgment of the trial court rendered in favor of defendants-appellees, William Schultz and Lisa Schultz Individually and William Schultz and Lisa Schultz d/b/a Po Folks Fruits and Vegetables and Ohio Security Insurance Company (collectively "defendants" or "Po Folks"), granting defendants' Motion for Summary Judgment and dismissing Mrs. Marks' claims against defendants, with prejudice. For the following reasons, we reverse the trial court's October 10, 2019 judgment and remand for further proceedings.

## FACTS AND PROCEDURAL BACKGROUND

On August 24, 2016 between 12:30 p.m. and 1:00 p.m., Mrs. Marks entered Po Folks to purchase cantaloupes. Po Folks is an open-air produce stand, where the produce is displayed under a roof. Upon entering the store, Mrs. Marks saw a bin containing cantaloupes and a bin containing watermelons. The bins were made of cardboard, and the watermelon bin sat on a wooden pallet. The cantaloupe bin was positioned to the right side of the watermelon bin.

Mrs. Marks walked directly to the cantaloupe bin. She selected two cantaloupes, held them to her chest, looked toward the checkout stand to the left, and turned in an attempt to proceed to the checkout stand. As she started to take a step, her foot became caught in the pallet located under the watermelon bin, and she fell.

After Mrs. Marks fell and was loaded into an ambulance, Mrs. Marks' son, Todd Marks, received a phone call, notifying him of the accident. Mr. Marks arrived at Po Folks within twenty-five or thirty minutes after receiving the phone call. He took photographs of the fruit bins, including the watermelon bin at issue, and the area where Mrs. Marks fell.

On August 18, 2017, Mrs. Marks filed a Petition for Damages, naming William Schultz and Lisa Schultz, individually and d/b/a Po Folks Fruits and Vegetables, and Po Folks' insurer, Ohio Insurance Company. Mrs. Marks alleged her injuries and damages were caused by the negligence of Po Folks, which failed to exercise reasonable care to keep the aisles, passageways, and floors in a reasonably safe condition and failed to take reasonable efforts to keep the premises free of any hazardous conditions. Mrs. Marks alleged the conditions of the aisles and passageways at Po Folks created an unreasonable risk of harm, was unreasonably dangerous in normal use, resulted in a vice or defect in the custody and control of defendants, was reasonably foreseeable, and that Po Folks had constructive notice and failed to remedy the defect.

On April 12, 2019, defendants filed a Motion for Summary Judgment, arguing that Mrs. Marks could not satisfy her evidentiary burden of showing that the display upon which she allegedly tripped constituted an unreasonably dangerous condition that was reasonably foreseeable, as it was open and obvious. Attached to the motion were the deposition of Mrs. Marks with photographs attached thereto, the deposition of Mr. Marks with photographs attached thereto, and the affidavit of Lisa Schultz.

Mrs. Marks filed a Memorandum in Opposition to Defendants' Motion for Summary Judgment, offering an expert's opinion that a hazardous condition existed at Po Folks that was not open and obvious, thus, creating a genuine issue of material fact precluding summary judgment. Attached to the opposition were excerpts from the depositions of Mrs. Marks and Mr. Marks as well as the affidavit of John F. Leyenberger, a safety expert.

The trial court heard the Motion for Summary Judgment on October 1, 2019 and granted the motion in open court. On October 10, 2019, the trial court signed a

judgment, granting defendants' Motion for Summary Judgment and dismissing Mrs. Marks' claims against defendants with prejudice.

Mrs. Marks now appeals, assigning as error the trial court's granting of the Motion for Summary Judgment, where she argues such was based on the trial court's inappropriate evaluation of the weight and credibility of unchallenged expert testimony.

## LAW AND ANALYSIS

Summary judgment procedure is favored and "is designed to secure the just, speedy, and inexpensive determination of every action ... and shall be construed to accomplish these ends." **Jackson v. Wise**, 2017-1062 (La. App. 1st Cir. 4/13/18), 249 So.3d 845, 850, *writ denied*, 2018-0785 (La. 9/21/18), 252 So.3d 914 (*quoting* La. Code Civ. P. art. 966(A)(2)). After an opportunity for adequate discovery, a motion for summary judgment shall be granted if the motion, memorandum, and supporting documents show there is no genuine issue as to material fact and that the mover is entitled to judgment as a matter of law. La. Code Civ. P. art. 966 (A)(3). A genuine issue of material fact is one as to which reasonable persons could disagree; if reasonable persons could reach only one conclusion, there is no need for trial on that issue and summary judgment is appropriate. **Campbell v. Dolgencorp, LLC**, 2019-0036 (La. App. 1st Cir. 1/9/20), 294 So.3d 522, 526. In reviewing the trial court's decision on a motion for summary judgment, this court applies a *de novo* standard of review using the same criteria applied by the trial courts to determine whether summary judgment is appropriate. **Jackson**, 249 So.3d at 850.

The burden of proof rests with the mover. La. Code Civ. P. art. 966(D)(1). Nevertheless, if the mover will not bear the burden of proof at trial on the issue that is before the court on the motion for summary judgment, the mover's burden on the motion does not require him to negate all essential elements of the adverse

4

party's claim, action, or defense, but rather to point out to the court the absence of factual support for one or more elements essential to the adverse party's claim, action, or defense. **Id.** The burden is on the adverse party to produce factual support sufficient to establish the existence of a genuine issue of material fact or that the mover is not entitled to judgment as a matter of law. **Id.**

A fact is "material" when its existence or nonexistence may be essential to the plaintiff's cause of action under the applicable theory of recovery and it potentially insures or precludes recovery, affects a litigant's ultimate success, or determines the outcome of the legal dispute. **Primeaux v. Best Western Plus Houma Inn**, 2018-0841 (La. App. 1st Cir. 2/28/19), 274 So.3d 20, 27. Simply put, a "material" fact is one that would matter on the trial on the merits. **Id.** Any doubt as to a dispute regarding a material issue of fact must be resolved against granting the motion and in favor of a trial on the merits. **Id.** Because the applicable substantive law determines materiality, whether a particular fact in dispute is material must be viewed in light of the substantive law applicable to the case. **Id.**

At the summary judgment stage, a court should remain cognizant that: (1) the trial court cannot make credibility determinations on a motion for summary judgment; (2) the court must not attempt to evaluate the persuasiveness of competing scientific studies, and in performing its gatekeeping analysis, the court must "focus solely on the principles and methodology, not on the conclusions they generate"; (3) the court "must draw those inferences from the undisputed facts which are most favorable to the party opposing the motion"; and (4) most importantly, because summary judgments deprive the litigants of the opportunity to present their evidence to a jury, they should be granted only when the evidence presented at the motion for summary judgment, including admissible expert opinion evidence, establishes that there is no genuine issue of material fact in dispute. **Independent Fire Insurance Co. v. Sunbeam Corp.**, 99-2181 (La.

5

2/29/00), 755 So.2d 226, 235-36. Thus, if a party submits expert opinion evidence in opposition to a motion for summary judgment that would be admissible under **Daubert v. Merrell Dow Pharm., Inc.**, 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993) (and the other applicable evidentiary rules) and is sufficient to allow a reasonable juror to conclude that the expert's opinion on a material fact more likely than not is true, the trial court should deny the motion and let the issue be decided at trial. **Independent Fire Insurance Co.**, 755 So.2d at 236.

The applicable substantive law in this case is set forth in La. R.S. 9:2800.6, which provides in pertinent part as follows:

> A. A merchant owes a duty to persons who use his premises to exercise reasonable care to keep his aisles, passageways, and floors in a reasonably safe condition. This duty includes a reasonable effort to keep the premises free of any hazardous conditions which reasonably might give rise to damage.
>
> B. In a negligence claim brought against a merchant by a person lawfully on the merchant's premises for damages as a result of an injury, death, or loss sustained because of a fall due to a condition existing in or on a merchant's premises, the claimant shall have the burden of proving, in addition to all other elements of his cause of action, all of the following:
>
> (1) The condition presented an unreasonable risk of harm to the claimant and that risk of harm was reasonably foreseeable.
>
> (2) The merchant either created or had actual or constructive notice of the condition which caused the damage, prior to the occurrence.
>
> (3) The merchant failed to exercise reasonable care. In determining reasonable care, the absence of a written or verbal uniform cleanup or safety procedure is insufficient, alone, to prove failure to exercise reasonable care.

A merchant owes a duty to persons using his premises to exercise reasonable care to keep such premises in a reasonably safe condition. **Primeaux**, 274 So.3d at 28 (*citing* La. R.S. 9:2800.6(A)). The absence of an unreasonably dangerous condition implies the absence of a duty on the part of the defendant. **Id.**

In order to prove that a merchant is liable for damages sustained as a result of a fall due to a condition that existed in or on the merchant's premises, a plaintiff

6

must prove by a preponderance of the evidence, through either direct or circumstantial evidence: (1) the existence of a condition that presented an unreasonable risk of harm which was reasonably foreseeable; (2) the merchant's actual or constructive notice of the condition; and (3) the merchant's failure to exercise reasonable care. **Campbell**, 294 So.3d at 528; La. R.S. 9:2800.6(B). Failure to prove any one of the foregoing requirements is fatal to a plaintiff's case. **Williams v. Liberty Mutual Fire Insurance Co.**, 2016-0996 (La. App. 1st Cir. 3/13/17), 217 So.3d 421, 424, *writ denied*, 2017-0624 (La. 6/5/17), 219 So.3d 338.

Although the owner of a commercial establishment has an affirmative duty to keep the premises in a safe condition, merchants are not insurers of their patrons' safety, and a customer is under a duty to use ordinary care to avoid injury. **Jackson-Silvan v. State Farm Casualty Insurance Co.**, 2014-0939 (La. App. 1st Cir. 1/7/15), 2015 WL 115406, *4 (unpublished), *writ denied*, 2015-0637 (La. 5/22/15), 171 So.3d 252; *see also* **Williams**, 217 So.3d at 424. A merchant is not absolutely liable every time an accident happens. **Williams**, 217 So.3d at 424; **Jackson-Silvan**, 2015 WL 115406, at *4.

As outlined above, the defendants' Motion for Summary Judgment asserts that Mrs. Marks will be unable to satisfy her evidentiary burden of showing that the display upon which she allegedly tripped constituted an unreasonably dangerous condition. In this regard, a hazardous condition is one that creates an unreasonable risk of harm to customers under the circumstances. **Campbell**, 294 So.3d at 529. In determining whether a condition is unreasonably dangerous, courts have adopted a four-part risk-utility balancing test. **Williams**, 217 So.3d at 425. This test requires consideration of: (1) the utility of the complained-of condition; (2) the likelihood and magnitude of harm, which includes the obviousness and apparentness of the condition; (3) the cost of preventing the harm; and (4) the nature of the plaintiff's activities in terms of its social utility or whether

7

it is dangerous by nature. **Id.** Simply put, the trier of fact must decide whether the social value and utility of the hazard outweigh, and thus justify, its potential harm to others. **Id.**

The second prong of the risk-utility balancing test focuses on whether the defective condition is obvious and apparent, or as it has come to be commonly known, "open and obvious." **Williams**, 217 So.3d at 425. Generally, a defendant does not have a duty to protect against an open and obvious hazard. **Id.** In order for a defect to be considered open and obvious, the danger created by that defect must be apparent to all, i.e., everyone who may potentially encounter it. **Id.**

Whether a defect is open and obvious may be resolved on summary judgment. *See* **Ludlow v. Crescent City Connection Marine Division**, 2015-1808 (La. 11/16/15), 184 So.3d 21 (per curiam) (any danger presented by a concrete barrier on a vehicle ramp was "obvious and apparent to anyone who might potentially encounter it"); **Allen v. Lockwood**, 2014-1724 (La. 2/13/15), 156 So.3d 650, 653 (per curiam) (unpaved grassy parking area where accident occurred was open and apparent); **Rodriguez v. Dolgencorp, LLC**, 2014-1725 (La. 11/14/14), 152 So.3d 871, 872 (per curiam) (shopping cart that patron tripped over was open and obvious). Thus, in the absence of any material issues of fact, a court may determine by summary judgment that a defect is open and obvious and, therefore, does not present an unreasonable risk of harm. **Williams**, 217 So.3d at 425.

In the case before us, the trial court was tasked with deciding if there was a genuine issue of material fact as to whether the condition of the watermelon display created an unreasonable risk of harm. Summary judgment is proper when no legal duty is owed because the condition encountered is obvious and apparent to all and not unreasonably dangerous. **Williams**, 217 So. 3d at 426.

In support of its motion, Po Folks highlighted deposition testimony from Mrs. Marks, showing that she had been to Po Folks often and she saw the watermelon display prior to falling. Additionally, Po Folks attached deposition testimony from Mr. Marks, whereby he stated that the lighting depicted in the photographs was the same as the lighting when Mrs. Marks was in the store, and there was nothing obscuring the view of the pallet of watermelons. Po Folks also pointed to the photographs taken by Mr. Marks at least twenty-five to thirty minutes after the accident, which depict the watermelon pallet as jutting out further than the cantaloupe bin creating a T-shape and reflect that the watermelon bin was stacked directly on top of the pallet without the pallet protruding from underneath the watermelon bin. When looking at the post-accident photograph of the watermelon bin attached to his deposition as Exhibit D, showing the bin stacked directly on top of the pallet, Mr. Marks testified that, to his knowledge, the pallet was in the same condition as it was at the time of Mrs. Marks' accident.

In further support of the motion, Po Folks attached the affidavit of Lisa Schultz, the owner of Po Folks at the time of the accident. Mrs. Schultz attested that Po Folks purchased watermelons from suppliers and produce wholesalers to display and sell, and, for at least fifteen years, watermelons were shipped in bins made of rigid cardboard, which extended approximately three feet tall and were placed on top of 4x4 wooden pallets. She stated that the pallet and bin are designed to be placed directly on the sales floor as a freestanding display. Mrs. Schultz stated that when they are full, the bins contain between twenty and thirty watermelons, weigh several hundred pounds, and can only be moved by using either a pallet jack or a forklift or when the bin is empty. Mrs. Schultz further attested that each bin has large arrows running from the top of the bin down to the bottom of the pallet, and the arrows are striped to increase visibility and are several inches wide. Mrs. Schultz stated that watermelon displays such as these are

extremely common in Louisiana during watermelon season and can be found in any grocery store or produce stand. Lastly, Mrs. Schultz attested that, in her twenty-six years of owning Po Folks, she has never had a customer trip or fall over a watermelon display.

In opposition to Po Folks' motion, Mrs. Marks submitted the affidavit of John F. Leyenberger, who is a board-certified Safety Professional, a Chartered Property Casualty Underwriter, an Associate in Risk Management, and a professional member of the American Society of Safety Professionals. In rendering his opinion, Mr. Leyenberger relied upon his May 17, 2019 inspection of the Po Folks store, the depositions of Mrs. Marks and Mr. Marks and the exhibits attached thereto, Mr. Marks' photographs and those of a claims adjuster, photographs taken during his store inspection, pleadings, discovery responses, an incident report, and various safety publications.

In his affidavit, Mr. Leyenberger opined that the watermelon display placement next to the cantaloupe bin created an unreasonable hazard, which directly caused Mrs. Marks' fall. He stated that, at the time of the accident, the watermelon cardboard shipping container and the pallet beneath were not properly positioned and obstructed the aisle. In his opinion, the position of the cardboard shipping container and the pallet, extending past the other merchandise display bins, is not the typical or recommended method to set up retail floor displays. Further, Mr. Leyenberger attested this did not follow retail industry floor display standards, and it expanded a trip hazard already known to exist within the retail industry. Mr. Leyenberger opined such would be unexpected by customers shopping close to the open bins.

Mr. Leyenberger further opined that Po Folks failed to install readily-available safety devices such as pallet skirts that would have reduced the risk of a customer catching his or her foot in the pallet opening. In this regard, Mr.

10

Leyenberger stated that black-colored arrows printed on the cardboard watermelon shipping container did not comply with ANSI or ISO standards on safety warning signs, color, or design. He said the black arrows on the subject container are similar to orientation labels (i.e. "This End Up") normally printed in black ink on shipping boxes, creating confusion in recognizing the arrows as a hazard warning label. Mr. Leyenberger pointed out that, in contrast, a second watermelon container next to the subject container had a red danger color arrow printed on it and a red-colored triangle flap highlighting the pallet corner trip hazard. Mr. Leyenberger further stated that cardboard flaps on the cardboard shipping containers at the pallet corners fail to highlight the known trip exposure to customers.

Mr. Leyenberger found Po Folks provided inadequate procedures on regular safety sweeps, safety inspections, and worker training, and these inadequate procedures allowed hazardous conditions to exist for extended periods of time. Furthermore, he opined that the pallet placement under the watermelon shipping container was not obvious and apparent, and the inadequately marked pallet corner was not obvious when standing in front of the cantaloupe bin. Mr. Leyenberger stated that the combination of the watermelon shipping container, protruding out several inches from the fruit bins, and the unmarked corner of the pallet exposed beyond the subject cardboard shipping container created a hazardous trip condition which was not typical or recommended placement in retail stores.

Based on the foregoing opinions and observations as well as retail industry customs and national safety standards, Mr. Leyenberger concluded as follows: the watermelon display was improperly arranged beyond the other two produce bins, creating a hazardous condition which, when combined with inadequate warning labels on the subject shipping container, created a dangerous trip and fall hazard not obvious to customers shopping close to the open-top produce bins; the informal

11

procedures and inadequate employee training in proper display placement and regular floor safety inspections resulted in the dangerous placement and inadequate warnings in the subject container; and Po Folks did not provide a reasonably safe place for customers to shop by allowing a known dangerous condition to exist, which directly caused Mrs. Marks' trip and fall incident, resulting in injuries.

Following a hearing on Po Folks' Motion for Summary Judgment, the trial court granted the motion, offering the following oral reasons for judgment:

> ... I think the pallet was on the floor of the produce stand where one would expect it to be. The black arrow, personally from looking at the pictures, to me, that's more obvious than the red one, because the red one is just a little short one down low.

> The black one is all the way down, and whether I think they knew what it meant or not, it should draw your attention to look down, whether they thought it was to shift that way or not, I don't know if that matters. I think the witness said she saw it when she went there. I think the shopper, using reasonable caution, should have seen the box of melons and the pallet under it, especially in the setting there in a fruit stand like that.

> I don't think the expert's opinion automatically makes something unreasonably dangerous. I don't think that by looking at the pictures that that condition is unreasonably dangerous.
> ...
> I don't think the Plaintiffs have met their burden of the question of unreasonably dangerous.

In the instant case, Mrs. Marks has the burden of proving liability, and we find Mrs. Marks raised several questions of fact concerning the existence and condition of the purported hazard. Our *de novo* review reflects that, in addition to the testimony highlighted by defendants, Mrs. Marks also testified that she had not been to Po Folks in a year or two and, when asked what was different from when she used to go to the store, she responded, "Everything." She stated she was not familiar with the layout of this location. Mrs. Marks further testified that the photographs of the accident scene, as referenced by defendants, do not depict how the watermelon bin looked at the time of the accident. Contrary to the positioning of the watermelon bin in the photographs attached to her deposition, which show

12

the watermelon bin stacked directly on top of a pallet, Mrs. Marks stated the watermelon bin was pushed back on the pallet, which placed the watermelon bin in a straight line with the other cardboard bins, at the time of her fall. Mrs. Marks testified that, due to this arrangement, the watermelon bin itself was "even with" the front of the cantaloupe bin, and she saw a straight pattern and a "clear shot" in front of her.

Furthermore, although Mrs. Marks saw the watermelon bin, she testified as follows: "What I didn't see was that there was a difference. The watermelon stand was sitting on a crate. It was the only one that was sitting on a ... pallet. And it was protruding forward more than the others." Mrs. Marks added that "[f]rom the top the cardboard containers were in a straight line and that's what I saw and later found out that the watermelon pallet from the bottom was protruding." Mrs. Marks' testimony was that the pallet underneath the watermelon bin was sticking out two to four inches beyond the cardboard bin. When looking at the photographs, Mrs. Marks maintained that "[t]he watermelons were pushed back" and "[t]here was more of the wood." Additionally, although Mr. Marks testified that the pallet in the photograph attached to his deposition was in the same condition as it was at the time of Mrs. Marks' fall, he acknowledged that he was not present at the time of the accident.

In her deposition, Mrs. Marks further testified that she did not notice the arrows on the side of the watermelon box and does not know what they mean. In this regard, she testified that the first time she saw the pallet was from the floor after she fell.

Despite her testimony that the position of the watermelon bin was different at the time of her accident and the time her son took photographs, Mrs. Marks stated she has no evidence that anyone moved the pallet of watermelons after her fall. Nevertheless, in addition to his own photographs, Mr. Leyenberger relied on

13

the photographs taken by Mr. Marks in rendering his opinion. Mr. Leyenberger still concluded the watermelon display was improperly arranged beyond the other two produce bins creating a hazardous condition which, when combined with inadequate warning labels on the subject shipping container, gave rise to a dangerous trip and fall hazard not obvious to customers shopping close to the open-top produce bins.

As Mrs. Marks pointed out in her first assignment of error, defendants did not challenge Mr. Leyenberger's qualifications, methodology, or conclusions. Furthermore, defendants raised no objection to Mr. Leyenberger's affidavit, in accordance with La. Code Civ. P. art. 966(D)(2), and offered no countervailing expert affidavit to support their Motion for Summary Judgment. Nevertheless, as outlined above, the trial court stated "I don't think the expert's opinion automatically makes something unreasonably dangerous. I don't think that by looking at the pictures that that condition is unreasonably dangerous." Accordingly, we agree with Mrs. Marks that the trial court conducted an impermissible credibility determination.[1]

Defendants rely on several cases to support their position that the watermelon display was not unreasonably dangerous, specifically **Upton v. Rouse's Enterprise, LLC**, 2015-484 (La. App. 5th Cir. 2/24/16), 186 So.3d 1195, *writ denied*, 2016-0580 (La. 5/13/16), 191 So.3d 1057, **Reed v. Home Depot USA, Inc.**, 37,000 (La. App. 2d Cir. 4/9/03), 843 So.2d 588, *writ denied*, 2003-1638 (La. 10/10/03), 855 So.2d 345, **Primrose v. Wal-Mart Stores, Inc.**, 48,370 (La. App. 2d Cir. 10/2/13), 127 So.3d 13, and **Taylor v. Wal-Mart Stores, Inc.**,

---

[1] *See* **Thompson v. Center for Pediatric and Adolescent Medicine, L.L.C.**, 2017-1088 (La. App. 1st Cir. 3/15/18), 244 So.3d 441, 446-47, *writ denied*, 2018-0583 (La. 6/1/18), 243 So.3d 1062 finding that, in the absence of an objection, the trial court is statutorily obligated to consider the expert's opinions under La. Code Civ. P. art. 966(D)(2). At that point, in determining whether the evidence creates a genuine issue of material fact, the trial court cannot make credibility determinations, evaluate testimony, or otherwise weigh the evidence. **Id.** at 447. The trial court must assume all affiants are credible. **Id.**

14

No. CIV.A. 05-1346-A, 2006 WL 1476031 (W.D. La. May 23, 2006). However, we find these cases distinguishable, where there was no issue of fact therein as to the positioning of the pallet and display and no expert testimony was offered therein by the plaintiffs.

Conversely, in **Dupas v. Travelers Property Casualty Insurance Co.**, 2000-12 (La. App. 3d Cir. 5/3/00), 762 So.2d 127, *writ denied*, 00-1541 (La. 6/30/00), 766 So.2d 548, as cited by Mrs. Marks, a customer was injured in a store, while trying to select a broom from a display set on a pallet. As she attempted to reach across the pallet display and up for a broom, she tripped and fell face forward. She alleged the pallet was unreasonably dangerous and called a safety expert, who testified that the platform created a hazard and should have been painted a contrasting color to distinguish it from the floor. After the customer presented her case in chief, the store moved for directed verdict, arguing that she did not present direct evidence that she tripped on a store display and did not present expert evidence specifically stating that the display presented an unreasonable danger. The trial court denied the motion for directed verdict. The Third Circuit Court of Appeal affirmed, noting that the store did not meet its burden of proving that no reasonable person could find that the customer did not trip over the platform and considering the expert testimony, a reasonable person could find that the display presented an unreasonably dangerous condition. **Id.** at 128-30.

Herein, Mrs. Marks has presented unrebutted expert summary judgment evidence, in opposition to defendants' motion, to show the watermelon display was improperly arranged, creating a hazardous condition, and Po Folks failed to provide a reasonably safe place to shop by allowing this known dangerous condition to exist. Further, Mrs. Marks' expert summary judgment evidence reflects that Po Folks did not install pallet skirts, which would have reduced the

risk of a customer catching his or her foot in the pallet opening, and the pallet placement under the watermelon shipping container and inadequately marked pallet corner was not obvious and apparent when standing in front of the cantaloupe bin. Thus, although the watermelon display itself may have been large and obvious, it is not clear that the display pallet, which caused Mrs. Marks to trip, was open and obvious. Considering such, we find a reasonable juror could find that the pallet herein posed an unreasonable risk of harm.

We further find the deposition testimony and photographs reveal a genuine issue of material fact as to whether the pallet was protruding from underneath the watermelon bin into the walkway, at the time of accident. If the watermelon bin was in fact pushed back on the pallet, making the front of the watermelon bin even with the front of the cantaloupe bin and making the pallet protrude from underneath the bin, then that may have led to an unreasonably dangerous condition, which was not readily apparent to all. On this record, it is not clear, as a matter of law, that the watermelon display pallet and its location were open and obvious and did not create an unreasonably dangerous condition under the circumstances. Moreover, it is not proper to make credibility determinations on a motion for summary judgment as the trial court did in this case. Thus, based on our *de novo* review, we find that the trial court erred in granted defendants' Motion for Summary Judgment.

**CONCLUSION**

For these reasons, we reverse the trial court's October 10, 2019 judgment, which granted the Motion for Summary Judgment filed by defendants, William Schultz and Lisa Schultz Individually and William Schultz and Lisa Schultz d/b/a Po Folks Fruits and Vegetables and Ohio Security Insurance Company, and dismissed Janice Marks' claims against defendants, with prejudice. We remand this case for further proceedings.

16

Appeal costs are assessed against the appellees, William Schultz and Lisa Schultz Individually and William Schultz and Lisa Schultz d/b/a Po Folks Fruits and Vegetables and Ohio Security Insurance Company.

**REVERSED AND REMANDED.**