738 So.2d 1205 (1999)
Rena Mae EASON, Plaintiff-Appellant,
v.
Charles Austin FINCH, and Red Red River Entertainment of Shreveport, A Louisiana Partnership In Commendam, d/b/a Harrah's Shreveport Casino, Defendants-Appellees.
No. 32,157-CA.
Court of Appeal of Louisiana, Second Circuit.
August 18, 1999.
*1206 S.P. Davis, Sr., Shreveport, Counsel for Appellant.
Cook, Yancey, King & Galloway by Mary D. Bicknell, Shreveport, Counsel for Appellee.
Before GASKINS, PEATROSS and KOSTELKA, JJ.
GASKINS, J.
The plaintiff, Rena Mae Eason, brought suit alleging that she was injured when an intoxicated patron knocked her down on a riverboat casino. The trial court granted summary judgment in favor of the defendant casino. The plaintiff appeals. For the reasons set forth below, we affirm.

*1207 FACTS
On October 14, 1996, the 67-year-old plaintiff went to Harrah's Casino in Shreveport with her son, Theodis Stephenson[1]; her grandson, Booker T. Pirtle; and her son's girl friend, Kcoretta Dixon. Another casino patron, Charles Austin Finch, bumped into the plaintiff, causing her to fall and injure her left wrist and right knee.
Immediately after the mishap, Harrah's security personnel escorted the plaintiff and Mr. Finch to an office where incident reports detailing the circumstances of the accident were filled out. The plaintiffs son declined Harrah's offer to send for an ambulance, opting to personally transport his mother to the hospital for treatment. Mr. Finch was escorted off Harrah's property by security personnel who put him in a cab.
The plaintiff sued both Mr. Finch and Red River Entertainment of Shreveport Partnership in Commendam, d/b/a Harrah's Shreveport Casino ("Harrah's"). In addition to Mr. Finch's negligence in walking into her, the plaintiff also alleged that Harrah's failed to provide for the safety of its customers or have properly trained security guards and/or employees. In her first supplemental and amending petition, she further faulted Harrah's for "causing and contributing" to Mr. Finch's drunken state by dispensing intoxicating alcohol and failing to adequately supervise Mr. Finch when it knew or should have known that "he was drunk or could become drunk by consuming unlimited amounts of alcohol." She specifically alleged that Harrah's was negligent in failing to provide adequate security to protect patrons such as herself from drunken persons like Mr. Finch.
Harrah's answered, denying the plaintiffs allegations and asserting that the incident was caused by the plaintiffs sole or comparative fault or, alternatively, by the fault of a third person over whom it exercised no control. It also made a cross-claim against Mr. Finch.[2]
The case was set for trial first in August 1998, then December 1998. However, in September 1998, Harrah's filed a motion for summary judgment. In support of this motion, Harrah's submitted the depositions of the plaintiff and the three persons who accompanied her to the casino on the evening of the accident. Her son and his girl friend did not see the collision between the plaintiff and Mr. Finch. Her grandson testified that he saw the actual impact; however, he did not see Mr. Finch before the accident. The plaintiff testified that Mr. Finch seemed to be trying to leave the boat at the time he bumped into her.
Also submitted in support of Harrah's motion were the affidavits of two of its security employees. Vickie Stokes, a guest safety officer, testified that, while walking the deck, she saw Mr. Finch sitting on the floor of the foyer where guests enter the boat and Mrs. Eason standing next to him. It was reported to her that Mr. Finch walked into Mrs. Eason and knocked her down. Ms. Stokes escorted them to complete incident reports. Mr. Finch appeared intoxicated and was reluctant to complete an incident report. Ms. Stokes learned that he had just arrived by cab; he later left the property in a cab. She further testified that she never saw Mr. Finch before the incident and that security received no other complaint concerning him. In another affidavit, Richard A. Berry, manager of security, surveillance and marine operations, testified that he reviewed guest incident reports as part of his job responsibilities and that it was reported that Mr. Finch walked into the plaintiff and knocked her down. After their incident reports were completed, the plaintiff was taken by her son to Schumpert Medical Center for treatment and Mr. *1208 Finch left by cab. Mr. Berry stated that Harrah's security personnel received no prior or subsequent complaints against Mr. Finch.
In opposition to the motion for summary judgment, the plaintiff submitted Harrah's answers to interrogatories in which it stated that, "After speaking with Mr. Finch, security determined that Mr. Finch appeared to have too much to drink, needed assistance, and placed him in a cab to his destination." She also filed portions of her son's and grandson's depositions in which they said that Mr. Finch appeared visibly intoxicated. Additionally, the plaintiff submitted a portion of Harrah's alcohol management program policy. It states that Harrah's "is dedicated to providing safe and secure environments in all operations." Under policy objectives, it further declares, in relevant part, that "[n]o intoxicated customer will be admitted onto Harrah's property, either the Parking Area, Pavilion, or the Shreve Star" and that "[w]e will make every reasonable attempt to prevent the over consumption of alcohol." The procedure section provides that employees are to "observe, monitor and report" any suspected intoxication and that employees should inform their supervisor if they suspect a customer is intoxicated.
On October 8, 1998, the trial court signed a judgment granting Harrah's motion for summary judgment. It specifically found that there was no evidence "presented in this record which would support a liability claim against the defendant...." All claims against Harrah's were dismissed with prejudice.
The plaintiff appeals.

SUMMARY JUDGMENT
Appellate courts review summary judgments de novo under the same criteria that govern the trial court's consideration of whether summary judgment is appropriate. Schroeder v. Board of Supervisors of Louisiana State University, 591 So.2d 342 (La.1991); Smith v. Our Lady of the Lake Hospital, Inc., 93-2512 (La.7/5/94), 639 So.2d 730.
The summary judgment procedure is designed to secure the just, speedy and inexpensive determination of every action, except those disallowed by law; the procedure is favored and must be construed to accomplish these ends. La. C.C.P. art. 966(A)(2). The burden of proof nevertheless remains with the mover. La. C.C. P. Art. 966(C)(2). A motion for summary judgment is properly granted if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to material fact, and that the mover is entitled to judgment as a matter of law. La. C.C.P. art. 966(B). Clark v. City of Shreveport, 31,407 (La. App.2d Cir.1/20/99), 726 So.2d 1042, writ denied, 99-0502 (La.4/1/99), ___ So.2d ___, 1999 WL 270004.
The party moving for summary judgment may simply point out to the court that there is an absence of factual support for one or more elements essential to the adverse party's claim, action or defense. The party opposing summary judgment cannot rest on the mere allegations or denials of her pleadings, but must show that she has evidence which, if believed, could satisfy her evidentiary burden of proof at trial. If she has no such evidence, then there is no genuine issue of material fact, and the movant is entitled to summary judgment. La. C.C.P. art. 966(C)(2); Lee v. Wall, 31,468 (La.App.2d Cir.1/20/99), 726 So.2d 1044; Gardner v. Louisiana State University Medical Center in Shreveport, 29,946 (La.App.2d Cir.10/29/97), 702 So.2d 53; Berzas v. OXY USA, Inc., 29,835 (La.App.2d Cir.9/24/97), 699 So.2d 1149; Bockman v. Caraway, 29,436 (La.App.2d Cir.4/2/97), 691 So.2d 815.

BUSINESS ESTABLISHMENT'S LIABILITY
In order to prevail in Louisiana in a negligence action under our duty-risk analysis, the plaintiff must prove: (1) that the defendant owed a duty of care to the *1209 plaintiff; (2) that the defendant breached the duty; (3) that the breach was a cause in-fact of the harm; and (4) that the risk and harm encountered by the plaintiff falls within the scope of the protection afforded by the duty breached (proximate cause). Coblentz v. North Peters Parking, Inc., 533 So.2d 98 (La.App. 4th Cir.1988).
A business establishment is under a duty to take reasonable care for the safety of its patrons, but it is not the insurer of their safety. Phillips v. Equitable Life Assurance Company of the United States, 413 So.2d 696 (La.App. 4th Cir. 1982), writ denied, 420 So.2d 164 (La. 1982); Mundy v. Department of Health and Human Resources, 609 So.2d 909 (La. App. 4th Cir.1992), affirmed, 620 So.2d 811 (La.1993); Coblentz v. North Peters Parking, Inc., supra. This duty does not extend to unforeseeable or unanticipated criminal acts by independent third persons. Only when the owner, management or employees of a business have or should have knowledge of a third person's intended injurious conduct that is about to occur and which is within the power of the owner, management or employees to protect against, does the duty arise. Rodriguez v. New Orleans Public Service, Inc., 400 So.2d 884 (La.1981); Johnston v. Fontana, 610 So.2d 1119 (La.App. 2d Cir.1992), writ denied, 618 So.2d 407 (La.1993); Thompson v. Hodge, 577 So.2d 1172 (La.App. 2d Cir.1991); Ballew v. Southland Corporation, 482 So.2d 890 (La.App. 2d Cir.1986).
If a business has voluntarily assumed a duty of protection, this duty must be performed with due care. Harris v. Pizza Hut of Louisiana, Inc., 455 So.2d 1364 (La.1984); Harrison v. Clark, 607 So.2d 1 (La.App. 2d Cir.1992).

DISCUSSION
The plaintiff asserts that under Harrah's own alcohol management program, the casino should never have permitted Mr. Finch's presence even upon its parking lotassuming that he arrived upon the property in an intoxicated condition. Furthermore, assuming that he was not intoxicated upon his arrival, the plaintiff's position is that Harrah's should not have served him alcohol or should have monitored him so as to prevent any manifestations of intoxication.
Under its alcohol management program, Harrah's endeavored to promote its patrons' safety. However, we do not believe that the simple implementation of this policy made the casino the insurer of the plaintiff's safety from all alcohol-related problems. The policy required Harrah's to take reasonable precautions in order to maintain a safe environment. The plaintiff has set forth no evidence, beyond the mere fact of the accident, demonstrating that Harrah's breached this policyor its ordinary duty of care as a business establishment. There is no evidence demonstrating that Mr. Finch was admitted to the casino in a state of visible intoxication. Nor is there any evidence that he was served alcohol at the casino by Harrah's employees. Upon first learning of inappropriate behavior by Mr. Finch, Harrah's security personnel took prompt action. Consequently, we find no evidence suggesting that Harrah's violated its duty as a business establishment to take reasonable care for the safety of its patrons or its own alcohol management policy. Without such evidence, we are compelled to find that summary judgment is proper in this case.

DISCOVERY
The plaintiff also claims that the trial court erred in considering Harrah's motion for summary judgment when discovery was not complete.
A defendant's motion for summary judgment may be made at any time. La. C.C.P. Art. 966(A). After adequate discovery or after a case is set for trial, a motion which shows that there is no genuine issue as to material fact and that the mover is entitled to judgment as a matter of law shall be granted. La. C.C.P. Art. 966(C)(1).
*1210 Under La.C.C.P. art. 966, a defendant may move for summary judgment, and the trial court may consider the motion before the parties have completed discovery. NAB Natural Resources, L.L.C. v. Willamette Industries, Inc., 28,555 (La. App.2d Cir.8/21/96), 679 So.2d 477. The mere fact that discovery is not completed does not procedurally bar the defendant from moving for summary judgment. Barron v. Webb, 29,707 (La.App.2d Cir.8/20/97), 698 So.2d 727, writ denied, 97-2357 (La.11/26/97), 703 So.2d 651. The trial court has the discretion to issue a summary judgment or to require further discovery. Orillion v. Alton Ochsner Medical Foundation, 97-115 (La.App. 5th Cir. 5/28/97), 695 So.2d 1063, writ denied, 97-1725 (La.10/13/97), 703 So.2d 617. While parties must be given a fair opportunity to carry out discovery and present their claim, there is no absolute right to delay action on a motion for summary judgment until discovery is completed. Butzman v. Louisiana Power and Light Co., Inc., 96-2073 (La.App. 4th Cir.4/30/97), 694 So.2d 514.
Suit was filed in October 1997; the defendant's motion for summary judgment was filed 11 months later in September 1998 and granted in October 1998.[3] The trial court did not abuse its discretion in granting summary judgment instead of requiring more discovery.

CONCLUSION
The summary judgment in favor of the defendant, Red River Entertainment of Shreveport Partnership in Commendam, d/b/a Harrah's Shreveport Casino, is affirmed. Costs are assessed against the appellant, Rena Mae Eason.
AFFIRMED.
NOTES
[1] We note that Theodis' last name is given alternatively in this record as "Stephenson" or "Stephens." For clarity, we use "Stephenson," the spelling mostly frequently used.
[2] The record indicates that the sheriff's office has been unable to locate Mr. Finch in order to serve him with either the plaintiff's suit or Harrah's cross-claim.
[3] Also, as previously noted the case was originally set for trial in August 1998. However, Harrah'snot the plaintiffmoved for a continuance from the August 1998 trial date on the grounds that discovery was not complete. (In particular, there were problems obtaining the deposition of Kcoretta Dixon, who was not deposed until August 12, 1998.) The continuance was initially granted. However, the plaintiff vigorously opposed this continuance and sought to have the case placed back on the August 1998 trial docket. Eventually the parties agreed to continue the case from the August trial docket, and it was placed on the December 1998 trial docket.