923 So.2d 940 (2006)
Glenn HUMPHRIES, Plaintiff-Appellant
v.
COOPER TRUCK CENTER, et al., Defendants-Appellees.
No. 40,586-CA.
Court of Appeal of Louisiana, Second Circuit.
March 8, 2006.
*941 James P. MacManus, for Appellant, Glenn Humphries.
McGlinchey Stafford, by Patrick J. O'Cain, New Orleans, for Appellees, Cooper Buick, Pontiac, GMC, Inc. and Freightliner Corp.
Montgomery, Barnett, Brown, Read, Hammond & Mintz, by Lawrence G. Pugh, III, Jason R. Anders, New Orleans, for Appellee, Bostrom Seating Inc.
Before STEWART, GASKINS and CARAWAY, JJ.
STEWART, J.
This is an appeal from a summary judgment which dismissed the negligence and products liability claims of the plaintiff, Glenn Humphries. After a de novo review of the record, we find no genuine issue of material fact that would preclude summary judgment, so we affirm the trial court's judgment.

FACTS
In his petition for damages, the plaintiff alleged that on August 26, 1996, while driving a truck for his employer, Carpet Transport, Inc., ("CTI"), the seat of the truck "suddenly malfunctioned, seized up, no longer absorbed the impact of the road, but instead allowed [his] back to be wrenched and jarred." He sustained a lumbar injury and subsequently underwent surgery. He named two defendants  Freightliner, Inc., the manufacturer of the truck, and Cooper Truck Center ("Cooper"), CTI's automotive repair provider. The plaintiff asserted products liability claims against Freightliner alleging that the seat was unreasonably dangerous in construction and composition, in design, in lack of an adequate warning about a design defect, and in failing to conform to an express warranty. Asserting that Cooper had repaired the seat several times prior to the accident, the plaintiff alleged that Cooper was negligent in failing to properly repair or replace the defective seat. The petition did not allege any specific defect in the seat.
*942 The matter was first set for trial on August 18, 2003, but it was continued by joint motion of the parties to allow for completion of discovery. A new trial date was set for July 19, 2004, almost seven years from the date the suit was filed. On November 3, 2003, the defendants filed a third-party demand against Bostrom Seating, Inc., ("Bostrom"), the manufacturer of the seat which was placed in the truck by Freightliner. The plaintiff then amended his petition to name Bostrom as a defendant and to assert the same products liability claims against Bostrom as it had against Freightliner. Additionally, the plaintiff asserted that Bostrom and Freightliner were negligent in allowing Cooper to improperly repair the seat, in not referring CTI to another dealership for repairs, and in not properly fitting and adjusting the seat or supervising such by Cooper.
Bostrom subsequently filed a motion to continue the July 2004 trial date; the other defendants joined in the motion. They complained that the plaintiff had not responded to discovery requests seeking the reports and findings of his experts. In a pretrial memorandum filed May 18, 2004, the plaintiff had named two experts, Dr. Scott and Jeff Evans, whom he expected to testify about the condition of the seat, its design and construction, and the failure of the repairs. However, the defendants asserted that the plaintiff's newly named experts had not yet generated any reports or issued any opinions. Because the seat from the truck was no longer available, Bostrom made available to the plaintiff the seat assembly and component engineering drawings. This was copyrighted information, so Bostrom wanted a stipulation of confidentiality from the plaintiff and filed a motion for a protective order. The record also indicates that Bostrom constructed a new seat for discovery purposes.
On May 21, 2004, Freightliner and Cooper filed a motion for summary judgment asserting that after almost six years the plaintiff lacked sufficient evidence to sustain his claims of products liability and negligence. The motion was supported by the plaintiff's answers to interrogatories, various depositions, and service tickets from Cooper. These exhibits established that there was no problem with the seat when CTI purchased the truck. Six or seven months later, the seat broke for unknown reasons. A ticket from Cooper dated September 20, 1995, showed that parts were ordered for the seat. Thereafter, the plaintiff continued to drive the truck knowing that the seat was broken, and he did so even after injuring his back a short time prior to the incident of August 26, 1996. The seat was finally repaired after the incident at issue here.
Bostrom also filed an exception of prescription and a motion for summary judgment similar to that filed by the other defendants.
In his opposition to the motions for summary judgment, the plaintiff made no effort to address the products liability claims. He asserted that he could not address them until discovery was complete. He claimed that his discovery requests to Bostrom covered all the "design, products and biomechanical issues relating to this case." The plaintiff had filed a motion to compel discovery against Bostrom, but the motion is not included in the record. As to his negligence claims against Cooper, he asserted that the truck was brought in several times for repair and that Cooper claimed to have repaired it. He referred to the deposition of his treating physician to establish a causal connection between his injury and the fault of Freightliner and Cooper in failing to repair the seat.
*943 On January 6, 2005, the trial court heard the motions to compel, Bostrom's exception of prescription, and the motions for summary judgment. The minutes reflect that plaintiff's counsel was allowed to argue in opposition to the motions for summary judgment even though he submitted his brief late. Although the hearing was not recorded, the court's oral reasons for its ruling are included in the record. In its ruling which thoroughly addressed the various claims, the trial court denied the plaintiff's motion to compel discovery, granted the defendants' motions for summary judgment, and deemed Bostrom's exception of prescription moot.
As to the claims against Cooper, the trial court found that the plaintiff produced nothing to show that Cooper actually contracted to repair the seat or represented that the seat was repaired. Rather, the court found that CTI brought the truck in for repairs in September 1995, at which time a part to repair the isolator, the broken component of the seat that controlled backward and forward motion, was ordered. However, CTI did not return the truck for the seat repair until after the plaintiff was injured. The trial court found that the plaintiff presented nothing to show that Cooper's policy of not notifying customers when parts arrived was below some standard of care. Moreover, the trial court found that the plaintiff had not produced any evidence to show that he could prove his injury was caused by the broken seat rather than by the bumpy road.
As to the products liability claims, the trial court focused on the plaintiff's failure to produce any evidence, particularly expert evidence, to show that he could prove some manufacturing defect in the seat. The trial court related that the plaintiff referred to a Dr. Scott, whom he wanted to review the matter; however, he could not come up with the expert's full name even by the end of the hearing. The court noted that the plaintiff had known of Bostrom since 1997 or 1998, but did not name it as a defendant until 2003. The court also noted that the plaintiff had not deposed Bostrom, had not arranged for any expert to review the drawings made available by Bostrom even though there had been time to do so, had made no effort to pick up the new seat manufactured by Bostrom, and had not even asked for a continuance of the hearing even though he claimed he needed more time to complete discovery.
Following the adverse judgment dismissing his claims, the plaintiff appealed. His chief complaint is that the trial court erred in granting summary judgment prior to the completion of discovery.

DISCUSSION
The summary judgment procedure is favored and is designed to secure the just, speedy, and inexpensive determination of every action except those disallowed by law. La. C.C.P. art. 966(A)(2). Appellate courts review summary judgments de novo under the same criteria that govern the trial court's consideration of whether summary judgment is appropriate. Berzas v. OXY USA, Inc., 29,835 (La.App.2d Cir.9/24/97), 699 So.2d 1149. We determine from the pleadings, depositions, answers to interrogatories, admissions on file, and affidavits, if any, whether there is an issue of material fact and whether the mover is entitled to judgment as a matter of law. Id. See also La. C.C.P. art. 966(B).
The moving party bears the burden of proof. However, when he will not bear the burden of proof at trial on the matter before the court on summary judgment, the movant is not required to negate all essential elements of the adverse party's claim; he need only point out an absence *944 of factual support for one or more essential elements of the adverse party's claim. If the adverse party then fails to produce factual support sufficient to establish that he will be able to satisfy his evidentiary burden at trial, there is no genuine issue of material fact and summary judgment is appropriate. La. C.C.P. art. 966(C)(2).
The adverse party may not rest on the mere allegations or denials of his pleadings in response to a properly made and supported motion for summary judgment. He is required to set forth specific facts showing that there is a genuine issue for trial. If he does not show this, then summary judgment, if appropriate, shall be rendered against him. La. C.C.P. art. 967(B).
As provided in La. C.C.P. art. 966(A)(1), the defendant may make a motion for summary judgment "at any time." The motion may be considered even before the parties have completed discovery. Eason v. Finch, 32,157 (La.App.2d Cir.8/18/99), 738 So.2d 1205, writ denied, 99-2767 (La.12/10/99), 751 So.2d 861. It is within the trial court's discretion to render a summary judgment, if appropriate, or to allow further discovery. Id. While parties should be given a fair opportunity to present their claim, there is no absolute right to delay action on a motion for summary judgment until discovery is completed. Id. See also Barron v. Webb, 29,707 (La. App.2d Cir.8/20/97), 698 So.2d 727, writ denied, 97-2357 (La.11/26/97), 703 So.2d 651.
The plaintiff argues that he needs more time for discovery. He asserts that Bostrom has not answered the discovery pertaining to the design and biomechanical issues. He claims he needs additional discovery to uncover the agreements that may exist among the defendants and establish their respective duties. He asserts that in the absence of these facts, the court cannot determine what material issues of fact exist.
The plaintiffs in Berzas v. OXY USA, Inc., supra, likewise argued in response to a motion for summary judgment that they needed more time to complete discovery. That case, which involved a claim for damages stemming from alleged exposure to environmental contaminants, had been pending for five years during which time the plaintiffs conducted no discovery and secured no experts. They claimed that they could not conduct discovery until completion of site testing by governmental agencies. They offered no evidence to establish factual support for their allegations, choosing instead to rely on the mere allegations of their petition in response to the motion for summary judgment. In granting a summary judgment, the court recognized that the plaintiffs had ample time for discovery and had offered no explanation for why they failed to conduct their own testing, depose employees of the defendant, or consult a physician to determine if they had suffered injuries.
Here too, the plaintiff has had ample time to conduct discovery. This matter had been pending for over seven years when the motions were heard by the trial court. The plaintiff's claim about Bostrom's failure to answer discovery rings hollow considering the deficiencies in the plaintiff's discovery efforts detailed by the trial court in its ruling. The depositions offered as exhibits reveal that the plaintiff had notice as early as 1998 that the seat was manufactured by Bostrom. There is no reasonable explanation as to why the plaintiff failed to name Bostrom as defendant earlier in the proceedings, failed to procure an expert to offer an opinion even after obtaining the drawings or blueprints from Bostrom, or failed to depose any employees of Bostrom or Freightliner who might have answered some of his questions *945 regarding the design and biomechanical issues plaintiff believes remain to be addressed. Our review of this record convinces us that the plaintiff has had a fair opportunity and sufficient time to conduct discovery and to build his case. We discern no reason for further delay for completion of discovery before considering the merits of the defendants' motions for summary judgment. Thus, we find no merit to the claim that summary judgment was improperly granted prior to completion of discovery.
The LPLA provides the exclusive theories of liability for manufacturers for damage caused by their products. La. R.S. 9:2800.52. A manufacturer is liable for damages proximately caused by an unreasonably dangerous product when the damages arose from a reasonably anticipated use of the product. La. R.S. 9:2800.54(A). A product may be unreasonably dangerous in construction or composition, in design, for lack of an adequate warning, or for the failure to conform to an express warranty. La. R.S. 9:2800.54(B)(1-4). The characteristic of the product that renders it unreasonably dangerous in construction or composition must exist at the time the product left the control of the manufacturer. La. R.S. 9:2800.54(C). The characteristic that renders the product unreasonably dangerous in design or for lack of an adequate warning must likewise exist at the time the product left the manufacturer's control or result from a reasonably anticipated use of the product. Id. The burden is on the plaintiff to prove the alleged defect. La. R.S. 9:2800.54(D). A defect is not inferred solely from the fact that an accident occurred. Jurls v. Ford Motor Company, 32,125 (La.App.2d Cir.1/6/00), 752 So.2d 260; Ashley v. General Motors Corp., 27,851 (La.App.2d Cir.1/24/96), 666 So.2d 1320.
In a negligence action, the plaintiff prevails by proving that the defendant owed a duty of care to the plaintiff, that the defendant breached the duty, that the breach was cause-in-fact of the harm, and that the risk of harm fell within the scope of protection afforded by the duty breached. Eason v. Finch, supra.
We have reviewed the evidence offered in support of summary judgment, including the depositions, excerpts of which were offered by the defendant in opposition to summary judgment as well. In his deposition, the plaintiff explained that the accident happened over a wavy section of the interstate just west of Jackson, Mississippi. He hit a bump, and the seat shot up and locked in place. Nine or ten months prior to the accident, he had told Eugene Ouchley, CTI's manager, that the seat was broken. The truck was taken to Cooper, but the seat was not repaired. The plaintiff continued driving the truck knowing that the seat remained broken.
Pamela Duffy, CTI's dock manager, assisted the plaintiff out of the truck when he returned from the trip to Jackson. She testified about his condition, the fact that the seat had been broken, and the fact that the truck had been taken to Cooper for repairs.
Kevin Smith, a driver at CTI, drove the truck from Georgia to Louisiana when it was purchased by CTI. He stated in his deposition that there was no problem with the truck when first purchased. However, the seat broke six to seven months later. He stated that bearings fell out of the slide rails which allowed the seat to move. This resulted in a rough ride, particularly when hitting bumps in the road. He reported the problem to Ouchley and took the truck to Cooper. Cooper ordered a part for the broken isolator. Exhibits attached to Smith's deposition describe the isolator's function as reducing the amount of road *946 shock by isolating the driver from the vehicle's motion and allowing the seat to move in a simple pendulum motion.
Victor Eugene Ouchley's deposition relates that the seat broke within the first year of its use. Ouchley described the seat as loose compared to others. When Kevin Smith and the plaintiff complained about the seat being broken, he told them to take it to Cooper for repair. Ouchley admitted that he was never personally told that the seat had been fixed and that he did not follow up to see that the repair was done. He also stated that the truck remained in constant use.
Michael Wilbanks, Cooper's parts service coordinator and warranty manager, stated in his deposition that Cooper serviced the Freightliner vehicle used by CTI. In reviewing the service history, Wilbanks found only three service tickets relating to the seat. These were dated September 20, 1995; August 30, 1996; and September 9, 1996. In September 1995, parts were ordered to repair the broken isolator. Wilbanks explained that Cooper does not call the customer when the parts arrive; instead, they wait for the customer to either call or bring the vehicle in for repair. Though the truck was brought to Cooper for other work, the tickets indicated that the seat was not repaired until September 9, 1996.
The final deposition was that of Dr. Douglas Liles, an orthopaedic surgeon who treated the plaintiff for his ruptured disk. Dr. Liles believed that the injury plaintiff sustained a short time prior to the incident of August 26, 1996, predisposed him to sustain a ruptured disk when he hit a "rough spot" in the road. Dr. Liles could not say whether it was the malfunction of the seat or the contour of the road that caused the injury.
The exhibits establish the absence of factual support for the plaintiff's products liability claims against Bostrom and Freightliner. It is clear that the seat broke and that plaintiff sustained an injury. However, there is simply no evidence of a manufacturing defect. No evidence indicates that the seat was unreasonably dangerous in either construction or composition, in design, for lack of an adequate warning, or for failure to conform to an express warranty. Defects are not presumed from the mere occurrence of an accident. Welch v. Technotrim, Inc., 34,355 (La.App.2d Cir.1/24/01), 778 So.2d 728, writ denied, XXXX-XXXX (La.6/15/01), 793 So.2d 1232. The facts that the seat had been broken for almost a year and that the plaintiff sustained an injury are not sufficient to create a material issue of fact for trial as to whether the seat had a manufacturing defect. The seat did not break until six or seven months after it had been in use. No explanation was posited as to the cause of the breakage. In the absence of any expert witness or other evidence to suggest that the seat broke due to some unreasonably dangerous characteristic of the product as defined under the LPLA, summary judgment was appropriate.
We also find that there is no material issue of fact for trial on the plaintiff's negligence claims. Aside from the fact that the LPLA provides the exclusive theories of liability against manufacturers for damages caused by their product, no evidence suggests a duty owed by either Bostrom or Freightliner to see that the seat was repaired. Nothing suggests that either party even knew of the problems with the seat. There is no evidence to suggest that Cooper owed a duty to the plaintiff to see to it that CTI brought the truck back for the seat to be repaired after the part was ordered in September 1995. There is also no evidence that Cooper contracted to repair the seat or represented that it had been repaired at any time prior to the *947 plaintiff's injury. In fact, the plaintiff knew that the seat had not been repaired and continued to use it until the time of his injury.
Finally, there is also no evidence to suggest that the seat was unreasonably dangerous to use in its broken condition such that Cooper would have had some duty to warn CTI not to use the seat. An exhibit attached to Kevin Smith's deposition shows that a lockout feature could be used when the isolator motion was not desired. This feature indicates that the isolator was not a necessary component for use of the seat. Rather, the isolator served as feature to aid the comfort of the driver by protecting him from the roughness of the roadway. No evidence was offered to suggest that a broken isolator posed a danger, other than possible discomfort, to drivers of the truck.
Whatever duties existed or breaches thereof occurred were on the part of CTI for its failure to see to it that the seat was repaired or replaced before one of its employees was injured. The plaintiff's response to the defendants' motions for summary judgment consisted of the conclusory allegations of his petition and deposition excerpts that failed to set forth specific facts showing a genuine issue for trial. As such, summary judgment was appropriate.

CONCLUSION
For the reasons set forth in this opinion, the judgment of the trial court is affirmed. Costs are assessed against the plaintiff.
AFFIRMED.