GARRETT, J.
*432 This appeal involves a three-vehicle accident, in which the plaintiff, Felipa Lenor Saldana, was injured when her vehicle collided with an 18-wheeler log truck on a rural highway. After the initial collision, Saldana then struck a parked vehicle. The trial court granted several motions for summary judgment. One judgment dismissed the alleged insurer of (1) the log truck driver, (2) the trucking company which employed him and leased the log truck, and (3) the individual who owned both the trucking company and the log truck on the basis that the policy had been cancelled prior to the accident. Another judgment dismissed the timber company which (1) was hired to cut and haul the timber and (2) hired the trucking company to assist in hauling the timber, and its insurer. Saldana appealed. We reverse the summary judgment in favor of the timber company and its insurer on the issue of signage and voluntary assumption of a duty to warn and remand the matter to the trial court. In all other respects, we affirm.
FACTUAL AND PROCEDURAL BACKGROUND
As explained below, the trial court was presented with a plethora of motions for summary judgment by different defendants and their insurers, which addressed multiple issues and bases for liability. As a result of the rulings on the motions, the only remaining defendants in this case are the log truck driver, his employer, and the owner of the log truck, none of whom have any liability insurance coverage.
On appeal and after oral argument, the plaintiff contests only two of the many rulings made below - the granting of summary judgment in favor of the timber company and its insurer on (1) the signage and failure to warn issue and (2) the issue of direct and/or vicarious liability for the actions of the log truck driver under the Federal Motor Carrier Safety Regulations ("FMCSR").
Based upon the numerous documents, depositions, and exhibits submitted in connection with the motions for summary judgment, we glean the following facts. On August 22, 2015, at about 7:40 a.m., a collision occurred on Highway 65 in Tensas Parish which involved three vehicles: a 2009 Honda Accord, which was driven by Saldana; a 1994 Peterbilt log truck, which was driven by David R. Glover, owned by Christopher W. Noland, leased to Noland's company, LaRue Trucking, LLC ("LaRue"), and insured by National Fire & Marine Insurance Company ("National *433 Fire"); and a 1990 Mack log truck, which was driven by Bryon K. Sanders, owned by Rowland Timber Co., Inc. ("Rowland Timber")[1] , and insured by National Fire. Pursuant to a written contract, Rowland Timber had been hired by Armstrong Hardwood Flooring Company ("Armstrong") to harvest timber it had bought from Somerset Plantation in Tensas Parish and to haul the logs to Armstrong's facility in Vicksburg, Mississippi. Rowland Timber transported some of the logs to Vicksburg. In order to complete the job, Rowland Timber also entered into a verbal agreement with LaRue to haul additional logs. Glover was employed by LaRue, and Sanders worked for Rowland Timber. Both Rowland Timber and LaRue were registered federal motor carriers, and each company's truck operated under its own United States Department of Transportation ("USDOT") number.
Both Saldana and Glover were southbound on a two-lane road. The trailer of Glover's log truck was empty as he was apparently en route to pick up a load. As Glover was turning left onto a private road leading to the Somerset Plantation logging site, Saldana attempted to pass Glover; their vehicles collided. Saldana then traversed the shoulder of the road and struck the front passenger side of Sanders's truck, which was parked alongside the dirt road, almost perpendicular to the highway. At the time of this collision, Sanders was outside of his truck, strapping down his load before proceeding to Vicksburg.
On March 9, 2016, Saldana filed suit against the drivers, owners, and insurers of the two log trucks, as well as the alleged employers of the drivers and Armstrong. She alleged that Glover illegally stopped in the southbound lane, had no functioning brake and/or tail lights, and failed to give a left-hand turn signal. She asserted that Glover's vehicle collided with her Honda. After the initial collision with Glover, her vehicle then struck Sanders's vehicle, which she claimed was unlawfully parked and/or obstructing passage.
In their answers, the defendants asserted that the accident was caused by Saldana's negligence. Additionally, Sanders and Rowland Timber alleged in their answer, as an affirmative defense, that "prior to the incident, Rowland Timber had placed orange warning signs that stated 'Log Trucks Entering Highway' that were visible from both lanes of travel along Highway 65 before the turn road."
While National Fire admitted in its answer that it had a policy issued to Rowland Timber, it asserted that its policy with LaRue was cancelled on August 13, 2015, nine days before the accident. On August 26, 2016, National Fire moved for partial summary judgment on the basis that the policy was cancelled due to nonpayment of the premium at the request of Capital Premium Financing, Inc. ("Capital Financing"), the company with which LaRue had financed its premiums and which had a power of attorney from LaRue in its premium finance agreement.
On June 13, 2017, Sanders and Rowland Timber filed a motion for summary judgment. They asserted that, since Sanders was properly stopped on a side road at the time of the collision, he neither caused nor contributed to the accident. Instead, Saldana's vehicle left the highway after impacting with Glover's truck and struck the front passenger side of Sanders's vehicle which was parked on a private roadway. Citing Saldana's deposition, they asserted that, as Glover slowed to make a left-hand turn into the private driveway, Saldana tried to pass Glover in the northbound *434 lane. They also argued that (1) LaRue was an independent contractor hauling timber for Rowland Timber and, consequently, Rowland Timber had no vicarious liability for LaRue; and (2) Rowland Timber had no duty to provide signage warning in the area where log trucks entered or exited the highway. On June 22, 2017, National Fire filed a motion for summary judgment in its capacity as the insurer for Sanders and Rowland Timber and adopted their arguments.
On January 12, 2018, Armstrong filed a motion for summary judgment. It requested that it be dismissed from the suit because Saldana could not meet her burden of proving that Rowland Timber or LaRue personnel were acting as its employees or that it was otherwise negligent. Armstrong stated that it had a written contract with Rowland Timber for Rowland Timber to log the Somerset Plantation site and transport the logs to Vicksburg. Rowland Timber subsequently entered into a separate oral agreement with LaRue; Armstrong did not contract with LaRue. Summary judgment in Armstrong's favor was granted by judgment signed February 8, 2018. No appeal was taken from this judgment.
On January 22, 2018, Rowland Timber filed another motion for summary judgment, seeking dismissal of any claims against it under the Code of Federal Regulations ("C.F.R.") arising out of the actions of LaRue and Glover. This motion was filed solely to address Saldana's newly asserted theory that, under the C.F.R., Rowland Timber was Glover's statutory employer. Rowland Timber contended that LaRue and Glover were operating under LaRue's independent USDOT registration number and that it could not be held liable for their actions.
On February 26, 2018, an amended petition for damages was filed. Among other things, it added additional claims pertaining to Saldana's alleged injuries, replaced allegations about Armstrong with claims against Rowland Timber, and added additional allegations against Glover. However, a motion to strike allegations of intoxication against Glover was subsequently granted.
On that same day, Saldana filed an opposition to the three motions for summary judgment involving Sanders, Rowland Timber, and National Fire as their insurer, as well as a separate opposition to National Fire's motion for partial summary judgment based on the cancellation of LaRue's policy. Attachments to the oppositions included excerpts from or whole depositions of Rowland, as an individual and on behalf of Rowland Timber; Noland; Saldana; Sanders; Blaine Burroughs, Armstrong's Director of Lumber procurement; State Trooper David Cummings, who investigated the accident; Lt. Mark Guy, an investigator from the Tensas Parish Sheriff's Office ("TPSO"); Sgt. Evelyn Guy, one of the responding TPSO officers; Steven Hisaw, a volunteer first responder; and David Stopper, Saldana's expert on trucking safety standards (along with a copy of his report); and photos of the accident scene.
A hearing on the Rowland Timber/Sanders/National Fire motions for summary judgment was held on April 19, 2018. Summary judgment was granted in favor of Sanders and Rowland Timber, with the trial court finding that Sanders's truck, which was on a private driveway, had no causal relationship with the accident and that no law required Rowland Timber to place warning signs; in favor of Rowland Timber on the issue of its alleged vicarious liability for LaRue and Glover pursuant to the Federal Motor Carrier Act ("FMCA"), based on a finding that LaRue was an independent contractor under both Louisiana law and the FMCA; and National Fire, *435 as alleged insurer of Sanders and Rowland Timber. A judgment granting all three motions for summary judgment was signed April 26, 2018, and the matter was designated a final judgment. Saldana filed a motion for new trial on May 8, 2018. The trial court denied the motion at a hearing on June 12, 2018, and by judgment signed on June 22, 2018.
On June 25, 2018, National Fire filed another motion for summary judgment based on cancellation of the LaRue policy. It specifically sought to refute Saldana's argument that National Fire could not cancel LaRue's policy on less than 35 days' notice because of rules in the USDOT regulations at 49 C.F.R. § 387.7, which concern certain policies issued to federally certified motor carriers. National Fire asserted that, since LaRue did not request that National Fire certify the policy with the USDOT and the policy was, consequently, not certified to the USDOT, the cancellation was proper and effective. Saldana filed another opposition to National Fire's motion for summary judgment on July 10, 2018.
At a hearing on July 25, 2018, the trial court found that National Fire's policy was properly cancelled. Consequently, it granted National Fire's motion for summary judgment, and dismissed with prejudice Saldana's claims against it as the alleged insurer of LaRue, Noland, and Glover. Judgment was signed August 6, 2018, and designated a final judgment under La. C.C.P. art. 1915. As a result of all of these rulings, the only remaining defendants are LaRue, Noland and Glover, none of whom have liability insurance.
Saldana appealed the following judgments: the April 26, 2018 judgment dismissing her claims against Sanders, Rowland Timber and its insurer, National Fire; the June 22, 2018 judgment denying her motion for new trial; and the August 6, 2018 judgment dismissing her claims against National Fire as the insurer of LaRue, Noland, and Glover. However, Saldana states in her brief that she does not contest the dismissal of Sanders in the April 26, 2018 judgment. Additionally, at oral argument, Saldana stipulated that she was waiving consideration of the August 6, 2018 judgment dealing with the cancellation of LaRue's policy with National Fire. Accordingly, we address only the remaining issues pertaining to the summary judgments in favor of Rowland Timber and its insurer.
MOTION FOR SUMMARY JUDGMENT
A motion for summary judgment is a procedural device used when there is no genuine issue of material fact for all or part of the relief prayed for by a litigant. Schultz v. Guoth , 10-0343 (La. 1/19/11), 57 So.3d 1002. The procedure is favored and shall be construed to secure the just, speedy, and inexpensive determination of actions. La. C.C.P. art. 966(A)(2). It is reviewed on appeal de novo , with the appellate court using the same criteria that govern the trial court's determination of whether summary judgment is appropriate, i.e. , whether there is any genuine issue of material fact, and whether the movant is entitled to judgment as a matter of law. Maggio v. Parker , 17-1112 (La. 6/27/18), 250 So.3d 874.
A motion for summary judgment shall be granted if the motion, memorandum, and supporting documents show that there is no genuine issue as to material fact and that the mover is entitled to judgment as a matter of law. La. C.C.P. art. 966(A)(3). The only documents that may be filed in support of or in opposition to the motion are pleadings, memoranda, affidavits, depositions, answers to interrogatories, certified medical records, written stipulations, *436 and admissions. La. C.C.P. art. 966(A)(4) ; Bank of Am., N.A. v. Green , 52,044 (La. App. 2 Cir. 5/23/18), 249 So.3d 219 ; Chanler v. Jamestown Ins. Co. , 51,320 (La. App. 2 Cir. 5/17/17), 223 So.3d 614, writ denied , 17-01251 (La. 10/27/17), 228 So.3d 1230.
The burden of proof rests with the mover. Nevertheless, if the mover will not bear the burden of proof at trial on the issue that is before the court on the motion for summary judgment, the mover's burden on the motion does not require him to negate all essential elements of the adverse party's claim, action, or defense, but rather to point out to the court the absence of factual support for one or more elements essential to the adverse party's claim, action, or defense. The burden is on the adverse party to produce factual support sufficient to establish the existence of a genuine issue of material fact or that the mover is not entitled to judgment as a matter of law. La. C.C.P. art. 966(D)(1).
Supporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein. La. C.C.P. art. 967(A). When a motion for summary judgment is made and supported as provided above, an adverse party may not rest on the mere allegations or denials of his pleading, but his response, by affidavits or as otherwise provided above, must set forth specific facts showing that there is a genuine issue for trial. If he does not so respond, summary judgment, if appropriate, shall be rendered against him. La. C.C.P. art. 967(B).
In ruling on a motion for summary judgment, the judge's role is not to evaluate the weight of the evidence or to determine the truth of the matter, but instead to determine whether there is a genuine issue of triable fact. All doubts should be resolved in the nonmoving party's favor. Maggio v. Parker , supra . A fact is material if it potentially ensures or precludes recovery, affects a litigant's ultimate success, or determines the outcome of the legal dispute. A genuine issue is one as to which reasonable persons could disagree; if reasonable persons could reach only one conclusion, there is no need for a trial on that issue and summary judgment is appropriate. Maggio v. Parker , supra . A "genuine issue" is a triable issue, an issue on which reasonable persons could disagree. Champagne v. Ward , 03-3211 (La. 1/19/05), 893 So.2d 773 ; Bloxham v. HDI-Gerling Am. Ins. Co. , 52,177 (La. App. 2 Cir. 6/27/18), 251 So.3d 601.
In deciding a motion for summary judgment, the court must assume that all of the affiants are credible. Tatum v. Shroff , 49,518 (La. App. 2 Cir. 11/19/14), 153 So.3d 561. The district court cannot make credibility calls on a motion for summary judgment, but must draw those inferences from the undisputed facts which are most favorable to the party opposing the motion. Bloxham v. HDI-Gerling Am. Ins. Co. , supra .
In its first motion for summary judgment, Rowland Timber sought dismissal of the claims against it on the following grounds: (1) it had no vicarious liability for Sanders, who was not negligent; (2) it had no vicarious liability for LaRue, which was an independent contractor under Louisiana law; and (3) it had no independent liability for failure to warn because it had no duty to put up signs alerting the public to its logging activities. In its second motion for summary judgment, Rowland Timber sought dismissal of vicarious liability claims against it for the actions of Glover and/or LaRue arising under the FMCSR.
As previously noted, Saldana has specifically waived any claims against Sanders.
*437 She has also failed to make any arguments in brief as to vicarious liability for LaRue and/or Glover under Louisiana law. Thus, we now address only the issues of (1) signage and duty to warn; and (2) vicarious liability under the FMCSR.
VOLUNTARILY ASSUMED DUTY TO WARN
Saldana claims that the trial court erred in granting summary judgment in favor of Rowland Timber and its insurer on the issue of signage and assumption of a duty to warn of hazardous conditions. The trial court ruled, without providing any reasons, that Rowland Timber had no duty here to erect signs because "there is apparently no law that requires such." Saldana argues that the record shows that Rowland Timber voluntarily assumed a duty to warn motorists of logging operations through its customary practices and procedures concerning the placement of warning signs and that it breached that duty here.
In its initial answer to the suit, Rowland Timber asserted that it had placed orange warning signs near the accident scene. However, in its motion for summary judgment, Rowland Timber took the position that it neither owed a legal duty to place signage in the area of the accident nor assumed such a duty.
Law
A duty of protection which has been voluntarily assumed must be performed with due care. Harris v. Pizza Hut of La., Inc. , 455 So.2d 1364 (La. 1984) ; Eason v. Finch , 32,157 (La. App. 2 Cir. 8/18/99), 738 So.2d 1205, writ denied , 99-2767 (La. 12/10/99), 751 So.2d 861 ; Teter v. Apollo Marine Specialities, Inc. , 2012-1525 (La. App. 4 Cir. 4/10/13), 115 So.3d 590. Negligent breach of a duty which has been voluntarily or gratuitously assumed may create civil liability. Slaid v. Evergreen Indem., Ltd. , 32,363 (La. App. 2 Cir. 10/27/99), 745 So.2d 793 ; Moore v. Safeway, Inc. , 95-1552 (La. App. 1 Cir. 11/22/96), 700 So.2d 831, writs denied , 97-2921 (La. 2/6/98), 709 So.2d 735, 97-3000 (La. 2/6/98), 709 So.2d 744, 744.
Duty is ordinarily a question of law. Harris v. Pizza Hut of La., Inc. , supra . However, the existence of a duty cannot be determined in the absence of a case's factual background and knowledge of what the surrounding circumstances may be. Harkins v. Gauthe , 97-912 (La. App. 3 Cir. 2/4/98), 707 So.2d 1308, writ denied , 98-0584 (La. 4/24/98), 717 So.2d 1170.
The question of whether a person has voluntarily assumed a duty is one of fact. Schulker v. Roberson , 91-1228 (La. App. 3 Cir. 6/5/96), 676 So.2d 684.
Summary judgment on the issue of duty is proper "only where no duty exists as a matter of law and no factual or credibility disputes exist." Teter v. Apollo Marine Specialities, Inc. , supra . Further, legal causation is a mixed question of law and fact that the jury decides if reasonable minds could differ. Harkins v. Gauthe , supra .
In support of its position that it had no duty to post warning signs, Rowland Timber cites Bijeaux v. State, Dep't of Transp. & Dev. , 97-224 (La. App. 3 Cir. 10/29/97), 702 So.2d 1088. In that case, the plaintiff alleged that he lost control of his car due to mud on the road near a sugarcane operation. He sued a nearby sugarcane farm, with whom he settled, and the Louisiana Department of Transportation and Development ("DOTD"). Following a bench trial, the trial court dismissed all claims against DOTD. On appeal, the plaintiff argued that the DOTD had a legal duty to provide warning signs in the area. The appellate court held that, while DOTD had discretionary statutory authority to *438 install temporary road signs to warn motorists of road hazards during sugarcane harvest season, it did not have a mandatory duty to post warning signs at points of ingress and egress of sugarcane fields. The court observed that such a requirement would necessitate hundreds of signs along Louisiana highways. It additionally noted the warnings of the Manual on Uniform Traffic Control Devices ("MUTCD") against the excessive use of signs and an expert's unrefuted testimony that warning signs would have been ineffective in that case. Likewise, in Racca v. St. Mary Sugar Coop., Inc. , 2002-1766 (La. App. 1 Cir. 2/23/04), 872 So.2d 1117, writ denied , 04-0698 (La. 5/7/04), 872 So.2d 1083, the first circuit upheld summary judgment in favor of a sugar cooperative and a sugar mill in a similar scenario, even though the plaintiff's expert opined that they should have erected warning signs to advise motorists of mud and sugarcane debris during harvest season. The court found that if DOTD, with its authority over highway maintenance and a specific authorizing statute, lacked the duty to post warning signs, then the sugar cooperative and the sugar mill certainly had no such duty. However, unlike the case before us, no party voluntarily placed signs in either of these cases.
Evidence Pertaining to Signs
In opposition to Rowland Timber's and its insurer's motions for summary judgment, Saldana submitted ample evidence to show that there are questions of material fact on these complex issues. In Rowland's individual and corporate depositions, he described his lengthy career in the logging industry and his customary practices and procedures. Rowland testified that, while no law required him to put out warning signs, he routinely did so for safety if he felt their presence was warranted.[2]
According to Rowland, his company owned 6 to 10 caution signs, which had a variety of different wording, including "Truck Entering Road," "Slippery When Wet," and "Log Trucks Entering Road." Rowland testified that he had two signs at this job side, one on each side. Because the entrance was not dangerous and there was considerable visibility, he did not believe more were needed. The signs he thought he used in the instant case were driven in the ground and then zip-tied to something else. Rowland stated that, while preparing for Rowland Timber's corporate deposition, he talked to his wife about the caution signs at this location. According to him, she told him that, when she drove up to the accident site, she knew it was his location when she saw the signs.
Sanders testified that signs were not always up when he hauled for Rowland. However, he stated that he recalled seeing two orange signs in the area of this accident. In two photos he was shown at his deposition, he indicated the areas where he believed they were located. Unfortunately, both photos are extremely dark and he was not asked to circle the alleged locations of the signs.[3]
Saldana testified that she did not see any orange signs or caution signs denoting log trucks entering or exiting the highway and that she would not have tried to pass the LaRue truck if there had been any *439 warning signs about logging trucks. Lt. Guy, Sgt. Guy, and Hisaw all testified that they did not see orange signs at the accident scene.
Noland testified that he did not recall seeing any orange signs at the accident scene. He also stated that he had never seen any such warning signs where he had hauled timber. Because he never had to do it, Noland thought the responsibility of placing signs would be on the logger, not the driver.
In his deposition and report, Stopper opined that it was "custom practice" to post warning signs where lumber and tree cutting was common and that Rowland Timber was the party with that responsibility. He admitted that he did not know if there was a specific state law so providing in Louisiana. He further stated that signs could not just be posted along a highway; there had to be a need, and the signs would have to comply with MUTCD.
Discussion
Rowland Timber's motion for summary judgment was premised on its argument that it had no statutory duty under Louisiana law to place signs in the area where the trucks entered and exited the highway. However, in its answer to Saldana's petition, Rowland Timber chose to plead as an affirmative defense that it placed orange signs warning "Log Trucks Entering Highway" along the highway near the accident site. This allegation might be construed as an expression of Rowland Timber's voluntary assumption of a duty to warn. Proof tending to establish Rowland Timber's voluntary assumption of the duty is found in the deposition testimony of Rowland and Sanders. Rowland further testified that he posted the signs in a reasonable and prudent manner. However, the testimony of several witnesses present at the accident scene conflict with Rowland's testimony on this issue, and we are precluded from making credibility determinations in deciding motions for summary judgment.
We understand that the existence of a duty is ordinarily a legal question. However, the question of whether a person has voluntarily assumed a duty is one of fact. Thus, in the instant situation, there are mixed issues of law and fact, and genuine issues remain as to the facts needed to determine the legal issues. The jury will need to decide whether Rowland Timber voluntarily assumed a duty through its alleged conduct in possessing and putting out signs due to safety concerns and, if so, whether that voluntarily assumed duty was breached here.
Based upon our de novo review, we find that the record is replete with conflicting and unresolved material issues of fact regarding the duty allegedly assumed by Rowland Timber and whether there was breach thereof. Accordingly, this matter is inappropriate for resolution on summary judgment. The trial court's granting of summary judgment in favor of Rowland Timber and its insurer on this issue is reversed, and the matter is remanded to the trial court.
VICARIOUS LIABILITY
Saldana argues that the trial court erred in granting summary judgment in favor of Rowland Timber and its insurer on the issue of whether Glover could be deemed to be the statutory employee of Rowland Timber under the FMCSR, thereby making Rowland Timber vicariously liable for Glover's actions.
Federal Provisions
In 1956, Congress amended the Interstate Common Carrier Act in order to protect the public from the tortious conduct of the often judgment-proof truck lessor operators by requiring interstate *440 motor carriers to assume full direction and control of the vehicles as if they were the owners of such vehicles. Jackson v. Wise , 2017-1062 (La. App. 1 Cir. 4/13/18), 249 So.3d 845, writ denied , 18-0785 (La. 9/21/18), 252 So.3d 914. Congress dissolved the Interstate Commerce Commission ("ICC") when it passed the Interstate Commerce Commission Termination Act of 1995 and replaced it with, among other agencies, the Federal Motor Carrier Safety Administration ("FMCSA"). Jackson v. Wise , supra .
The purpose of these laws and regulations was recently discussed in Mendoza v. Hicks , No. CV 15-1455, 2016 WL 915297 (E.D. La. Mar. 10, 2016) :
In the motor carrier industry, "authorized carriers" commonly lease equipment from independent contractors who are not subject to regulatory oversight by the Department of Transportation. Licensed carriers historically have used such leasing arrangements "to avoid safety regulations governing equipment and drivers." "Authorized carriers' use of non-owned vehicles also caused public confusion as to who was financially responsible for the vehicles." The Fifth Circuit explains that such arrangements often lead to a "round robin of finger pointing by carriers, lessors, owners and drivers ... and insurers."
In response to such abuse, Congress amended the Interstate Commerce Act to allow the Interstate Commerce Commission to promulgate regulations governing all aspects of non-owned equipment by authorized carriers. Those regulations are known as the Federal Motor Carrier Safety Regulations. 49 C.F.R 350-399. The purpose of the Regulations is to "to protect members of the public from motor carriers' attempts to escape liability for the negligence of drivers by claiming their drivers were independent contractors."
The Regulations accomplish this goal in two ways. First, they define "employee" broadly as "a driver of a commercial motor vehicle (including an independent contractor while in the course of operating a commercial motor vehicle), a mechanic, and a freight handler." 49 C.F.R. 390.5. Second, the Regulations require a lease between an authorized carrier and an equipment owner to provide that "the authorized carrier lessee shall assume complete responsibility for the operation of the equipment for the duration of the lease." 49 C.F.R. 376.12(c)(1).
Read together, these regulations impose statutory liability on the lessee of a vehicle "if the lessee permits a non-employee to operate the leased equipment and that operator causes damages. As the Fifth Circuit explains, a driver becomes a "statutory employee" when a lease exists between an authorized carrier and an owner of leased equipment. "Consequently, the carrier will be held vicariously liable for injuries resulting from the use of the leased equipment." [Case citations omitted.]
Discussion
The trial court ruled that the agreement between Rowland Timber and LaRue was that of an independent contractor and that Rowland Timber had no vicarious liability for any tortious conduct by LaRue and/or Glover under Louisiana law or the FMCA. As previously noted, Saldana has not contested on appeal the trial court's ruling that LaRue was an independent contractor under Louisiana law. Rather, Saldana's very narrow argument before us is that, under the FMCSR, Rowland Timber can still be held vicariously liable for the actions of an independent contractor's driver. As explained below, *441 Saldana's argument is premised on a strained reading of some regulations and language in some recent court cases which simply do not apply here.
As previously noted, both Rowland Timber and LaRue were registered federal motor carriers with each company's truck operating under its own DOT number. However, Saldana's expert, Stopper, opined that Glover was Rowland Timber's statutory employee under the FMCSR on the following bases: (1) the definition of "employee" found in 49 C.F.R. § 390.5 ; (2) the FMCSA published interpretation of that definition; and (3) Glover being "assigned" by Rowland Timber for this load. We have reviewed these three theories and find that they fail to impose vicarious liability upon Rowland Timber for Glover's actions under the circumstances of the instant case.
The pertinent portion of 49 C.F.R. § 390.5 states:
Employee means any individual , other than an employer, who is employed by an employer and who in the course of his or her employment directly affects commercial motor vehicle safety. Such term includes a driver of a commercial motor vehicle (including an independent contractor while in the course of operating a commercial motor vehicle) .... [Emphasis added.]
This provision contemplates that "individual" refers to human beings and not to corporations or other legal persons. See Illinois Bulk Carrier, Inc. v. Jackson , 908 N.E.2d 248 (Ind. Ct. App. 2009) ; Brown v. Truck Connections Int'l, Inc. , 526 F.Supp.2d 920 (E.D. Ark. 2007). Consequently, LaRue, the entity with whom Rowland Timber entered into an oral agreement, would not qualify.
The FMCSA published interpretation cited by Saldana states as follows:
Question: May a motor carrier that employs owner-operators who have their own operating authority issued by the ICC or the Surface Transportation Board transfer the responsibility for compliance with the FMCSRs to the owner-operators?
Guidance: No. The term "employee," as defined in § 390.5, specifically includes an independent contractor employed by a motor carrier. The existence of operating authority has no bearing upon the issue. The motor carrier is, therefore, responsible for compliance with the FMCSRs by its driver employees, including those who are owner-operators.
This interpretation was discussed in Beavers v. Victorian , 38 F.Supp.3d 1260 (W.D. Okla. 2014) :
This informal agency interpretation contained in a policy statement or enforcement guideline is not entitled to the degree of deference afforded to formal regulations under Chevron U.S.A. Inc. v. Natural Resources Defense Council, Inc. , 467 U.S. 837, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984), but is " 'entitled to respect' ... to the extent that these interpretations have the 'power to persuade.' "
Plaintiffs cite no authority for the proposition that FMCSA's interpretive guidance regarding 49 C.F.R. § 390.5 was intended to address the issue of common law tort liability for personal injuries caused by negligence of a commercial truck driver. Rather, the agency was speaking to the question of who is responsible for compliance with FMCSR, which establishes motor carrier requirements for matters such as record keeping, driver qualification and fitness, driver duties and hours of service, vehicle inspections and maintenance, and transportation of hazardous materials. See 49 C.F.R. §§ 390-397.
*442 The common sense answer is that the responsibility for these matters should lie with the employer rather than an individual driver, even if the driver is also registered as a motor carrier (owner-operator). The Court finds no persuasive value from this FMCSA guidance when considering the separate question of vicarious liability for the driver's negligence. To the contrary, because the federal motor carrier statutes do not address tort liability, the Court doubts that FMCSA intended to express any view regarding the issue of one motor carrier's vicarious liability for the negligence of another motor carrier. [Emphasis added.]
The interpretation relied upon by Saldana does not support her argument because it addresses situations with "owner-operators." In the instant case, there was no owner-operator. Glover operated but did not own the logging truck involved in the accident, and LaRue is the entity which employed the driver.
We particularly note the language in the Beavers case that the FMCSR does not address tort liability. Similar language is found in Jackson v. Wise , supra , a recent case from the first circuit. There, a plaintiff who was injured when she was thrown from a float pulled by a tractor-trailer sought to use the FMCSR to impose liability upon the trucking company with whom the owner-operator of the truck had a written lease agreement. The court conducted an exhaustive analysis of the evolution of the federal regulations. The court ultimately held that it was required to look to state law to determine whether the owner-operator was acting within the course and scope of his employment at the time of the accident to determine if the trucking company was liable to the plaintiff because the FMCSR provisions did not create vicarious liability on the trucking company for the actions of the owner-operator. During its lengthy examination of the jurisprudence, the court favorably quoted the following language:
The text of the regulation requires certain language within lease agreements, but it does not impose any liability scheme directly. It is reasonable to interpret the regulation as leaving that question to various States' common-law courts. [Emphasis theirs.]
Stopper also opined that Glover was "assigned" to this load by Rowland Timber. He reached this conclusion by virtue of the fact that Rowland Timber contracted with LaRue, which then sent out its driver. In relevant part, 49 C.F.R. § 390.5 defines an employer as follows:
Employer means any person engaged in a business affecting interstate commerce who owns or leases a commercial motor vehicle in connection with that business, or assigns employees to operate it [.] [Emphasis added.]
Rowland Timber did not own the truck driven by Glover, and there was no lease agreement here.
After briefing and prior to oral argument, Saldana cited a recently decided case, Puga v. RCX Sols., Inc. , 914 F.3d 976 (5th Cir. 2019), and the application of 49 U.S.C.A. § 14102, which refers to an "arrangement," not a "lease." Saldana contends that vicarious liability can be created under the arrangement that existed here. However, the court in that case stated that "[t]he relevant federal regulations only apply to motor carriers who use leased equipment." While there is language tending to support Saldana's argument in the initial opinion in the related case of Puga v. About Tyme Transp., Inc. , 227 F.Supp.3d 760 (S.D. Tex. 2017), recon. denied , 2017 WL 6049244 (S.D. Tex. Feb. 21, 2017), and recon. denied , 2017 WL 2730738 (S.D. Tex. June 26, 2017), in its order *443 denying the second motion for reconsideration, that court found that "arrangement" contemplates a "lease-like" scenario. Because the agreement in the instant case does not involve a lease, these provisions of the FMCSR simply do not support Saldana's position.
Based on the foregoing, we find no merit to Saldana's arguments that summary judgment in favor of Rowland Timber and its insurer should have been denied because Glover was its statutory employee under the FMCSR. Accordingly, we affirm the granting of summary judgment in favor of Rowland Timber and its insurer on the issue of vicarious liability under the FMCSR.
CONCLUSION
The trial court ruling granting summary judgment in favor of Rowland Timber Co., Inc., and its insurer, National Fire & Marine Insurance Company, on the issue of signage and voluntary assumption of a duty to warn is reversed.
We affirm the granting of summary judgment in favor of Bryon K. Sanders; in favor of Rowland Timber Co., Inc., and its insurer, National Fire & Marine Insurance Company, on the issue of vicarious liability under Louisiana law and the FMCSR; and in favor of National Fire & Marine Insurance Company as the insurer of Larue Trucking, LLC, Christopher W. Noland, and David R. Glover.
The matter is remanded to the trial court for further proceedings.
Costs of this appeal are assessed equally between (1) Felipa Lenor Saldana and (2) Rowland Timber Co., Inc., and National Fire & Marine Insurance Company.
AFFIRMED IN PART; REVERSED IN PART; REMANDED.
APPLICATION FOR REHEARING
Frances Jones Pitman, Jeanette Giddens Garrett - Writing, Shonda D. Stone, Jay Bowen McCallum, and Jefferson Rowe Thompson.
Rehearing denied.

Rowland Timber is owned by James Rowland ("Rowland").

Several times in his depositions, he described the purpose of the caution signs he put out: "It's just safety," "Just safety for traffic coming by," "I don't know ... any law being that you have to have them out there. It's ... just a safety thing," and "Maybe I like signs. I mean we do it for safety."

Plaintiff's counsel showed Sanders another photo of the accident scene which apparently did not show any signs. (However, this photo does not seem to be in the appellate record.) Nonetheless, Sanders maintained that he recalled seeing signs.